EZRA V. MOSS, JR., EVCO CONSTRUCTION CO., INC., GARY H. WATTS, TROY D. POLLARD, BENNIE J. SPRINGS AND AUDREY SPRINGS, PLAINTIFF-APPELLEES AND CROSS-APPELLANTS v. J. C. BRADFORD AND COMPANY AND J. C. BRADFORD FUTURES, INC., DEFENDANT-APPELLANTS AND CROSS-APPELLEES

No. 9226SC554

(Filed 6 July 1993)

1. **Contracts § 148 (NCI4th)— breach of securities contract— account liquidated without margin call—motion for directed verdict or j.n.o.v. for defendants—denied**

    The trial court properly denied defendants' motions for a directed verdict, a motion for judgment notwithstanding the verdict, or a new trial in a breach of contract action arising from the liquidation of plaintiffs' S & P 500 stock index futures on 20 October 1987 where the jury could reasonably have concluded that defendants breached the terms of the customer agreement in liquidating plaintiffs' accounts from evidence that the parties' contract obligated defendants to make a margin call upon plaintiffs and to give plaintiffs a reasonable time

MOSS v. J. C. BRADFORD AND CO.

[110 N.C. App. 788 (1993)]

to meet the margin call before liquidating their accounts; that plaintiff Moss was making a good faith effort to meet the margin call when defendants liquidated the account; that at least one of defendants' agents believed that Moss's actions would sufficiently satisfy the margin call; and that Moss was not informed that he risked liquidation by not arriving with the funds before 11:15 a.m.

**Am Jur 2d, Building and Construction Contracts § 129.**

2. **Trial § 38 (NCI3d) — breach of contract — requested instructions denied — issue fully and fairly presented — no error**

The trial court did not err in a breach of contract action arising from the liquidation of plaintiffs' margin account in S & P 500 stock index futures by refusing to give requested jury instructions where the instructions given fully and fairly presented the issue asserted in the requested instructions.

**Am Jur 2d, Trial § 1098.**

3. **Damages § 122 (NCI4th) — liquidation of margin account — measure of damages — reasonable time for reentry into market — less than one day — volatile conditions — no error**

The trial court did not err by denying plaintiffs' motion for a judgment notwithstanding the verdict in an action arising from the liquidation of their margin accounts where they contended that the jury must have considered a "window of reentry" of less than one business day in calculating damages. While giving plaintiffs at least one business day to reenter the market at defendants' expense may well have been reasonable under normal conditions, it cannot be said as a matter of law that it was unreasonable for a fact-finder to determine that some period less than one full day would be an appropriate window of opportunity under the extremely volatile market conditions of 20 October 1987.

**Am Jur 2d, Damages §§ 912, 913.**

Appeal by defendants and cross-appeal by plaintiffs from judgment entered on 5 February 1992 in Mecklenburg County Superior Court by Judge C. Walter Allen. Heard in the Court of Appeals 28 April 1993.

On 15 February 1988, plaintiffs filed a complaint against defendants, alleging breach of contract and seeking compensatory

and punitive damages. Defendants filed a timely answer to the complaint of plaintiff Ezra V. Moss, Jr., along with a motion to dismiss for improper venue regarding the complaint of the remaining plaintiffs. The motion to dismiss was denied and defendants filed timely answers. On 15 June 1988, plaintiffs filed an amended complaint through leave of court and an answer and amended answer were subsequently filed by defendants.

Defendants filed a motion for summary judgment and plaintiffs filed a motion for partial summary judgment. Judge Chase Sanders denied plaintiffs' motion for partial summary judgment and granted partial summary judgment to defendants on the issue of punitive damages only. Plaintiffs filed a timely notice of appeal from that judgment and this Court affirmed the trial court's judgment in an unpublished opinion, *Ezra V. Moss et al. v. J.C. Bradford Company et al.*, 103 N.C. App. 393, 407 S.E.2d 902 (1991).

The case came on for a jury trial before Judge C. Walter Allen. Defendants moved for a directed verdict at the close of plaintiffs' evidence and at the close of all the evidence. The trial court denied both motions. The jury returned a verdict in favor of plaintiffs in the amount of $175,000. The trial court denied defendants' motion for judgment notwithstanding the verdict or, in the alternative, a new trial. The trial court also denied plaintiffs' motion for judgment notwithstanding the verdict in the amount of $242,000. Both parties filed timely notices of appeal.

> *Howard M. Widis; and Hedrick, Eatman, Gardner & Kincheloe, by Hatcher B. Kincheloe; for plaintiffs-appellees/cross-appellants.*

> *Moore & Van Allen, by James P. McLoughlin, Jr. and Randel E. Phillips, for defendants-appellants/cross-appellees.*

WELLS, Judge.

## Defendants' Appeal

The contract at issue in plaintiffs' action is a customer agreement in which defendants agreed to act as a securities broker for plaintiffs. The parties' agreement, which incorporated the rules of the Chicago Mercantile Exchange and regular course and dealing within the securities business, sets out the rights and responsibilities of each party. Among other things, the agreement sets out procedures by which defendants could liquidate plaintiffs' accounts.

MOSS v. J. C. BRADFORD AND CO.

[110 N.C. App. 788 (1993)]

On 20 October 1987, under circumstances which we will discuss later, defendants liquidated plaintiffs' accounts. At trial, the jury found that defendants' liquidation of plaintiffs' accounts constituted a breach of the parties' customer agreement and returned a verdict for plaintiffs in the amount of $175,000.

[1] In their first issue on appeal, defendants contend that the trial court erred by not ruling, as a matter of law, that the defendants did not breach the parties' contract. Specifically, defendants appeal from the trial court's denial of their motion for directed verdict at the close of plaintiffs' evidence, their motion for directed verdict at the close of all the evidence, and their motion for judgment notwithstanding the verdict or, in the alternative, a new trial.

"In ruling on a motion for JNOV or for a directed verdict, the same standard applies." *Heath v. Craighill, Rendleman, Ingle & Blythe, P.A.*, 97 N.C. App. 236, 388 S.E.2d 178, *rev. denied*, 327 N.C. 428, 395 S.E.2d 678 (1990). In *Shreve v. Duke Power Co.*, 97 N.C. App. 648, 389 S.E.2d 444, *rev. denied*, 326 N.C. 598, 393 S.E.2d 883 (1990), this Court stated the applicable standard of review of a trial court's denial of a defendant's motion for directed verdict:

> A motion by a defendant for a directed verdict under N.C. Gen. Stat. § 1A-1, Rule 50(a) of the Rules of Civil Procedure, tests the legal sufficiency of the evidence to take the case to the jury and support a verdict for the plaintiff. *Manganello v. Permastone, Inc.*, 291 N.C. 666, 231 S.E.2d 678 (1977); *See also, Effler v. Pyles*, 94 N.C. App. 349, 380 S.E.2d 149 (1989). On such a motion, the plaintiff's evidence must be taken as true and the evidence must be considered in the light most favorable to the plaintiff, giving the plaintiff the benefit of every reasonable inference to be drawn therefrom. *Id.* A directed verdict for the defendant is not properly allowed unless it appears as a matter of law that a recovery cannot be had by the plaintiff upon any view of the facts that the evidence reasonably tends to establish. *Id.*

At trial, plaintiffs' evidence, taken in its most favorable light, tended to show the following. In 1985, Mr. Ezra V. Moss, a resident of Charlotte, N.C., opened a commodity and options account and entered into a customer agreement with J.C. Bradford & Co. and J.C. Bradford Futures, Inc. [hereinafter referred to as Bradford], a brokerage house headquartered in Nashville, Tennessee with an

office in Charlotte. Over the next two years, Moss made a profit of approximately $60,000 through his account with Bradford.

In 1987, having learned of Moss's success in the market, the other five plaintiffs in the case opened margin accounts and entered into customer agreements with Bradford which were identical to Moss's account and agreement. Each of the other plaintiffs deposited $10,000 in a margin account through Bradford and authorized Moss to begin trading on their behalf.

The plaintiffs in this case invested in Standard and Poor's 500 [S & P 500] stock index contracts which were traded on the Chicago Mercantile Exchange. Plaintiffs purchased seven stock index contracts on margin, paying a deposit of $10,000 per contract purchased. In September of 1987, when Moss bought the seven S & P 500 index contracts for himself and the plaintiffs, the S & P 500 index was at 324.10 points. With an index point value at $500, the seven contracts plaintiffs purchased on margin with a deposit of $10,000 per contract had an initial value of $162,050 each.

By buying S & P futures, the plaintiffs were betting that the index would rise between the purchase and expiration of the stock index contracts. Unlike commodity futures contracts, stock index futures do not contemplate physical delivery, but rather, at the maturity of a stock index contract, a cash transfer occurs based on whether the index price is above or below the contract price. For every point rise in the index, plaintiffs stood to profit by $500 per each stock index contract they owned; for every point the index fell, plaintiffs stood to lose $500 per stock index contract.

Investors in S & P 500 stock index contracts realize profits and losses at the end of each trading day. The futures clearing corporation calculates the profit or loss on each future at the end of the day and makes a call on the investors' brokers. In this case, defendants were the plaintiffs' broker. Profits are credited that night and may be drawn immediately. Losses must also be paid immediately. Exchange regulations require that the broker keep a maintenance margin on account with the clearing corporation. Thus, losses must be replenished by the investors each day to keep a minimum credit balance per contract. The individual investor is responsible for paying each day's losses, but if the investor does not pay the amounts owed, the broker is liable to the clearing corporation.

Included in the terms of the customer agreement, the defendants reserved the right to make margin calls to secure account deficits at their own discretion and to liquidate plaintiffs' stock contracts at any time after plaintiffs failed to meet a margin call. However, the agreement clearly contemplated that before liquidating plaintiffs' accounts on defendants' own initiative, defendants were under a duty to make a margin call and give plaintiffs a reasonable time within which to respond to the call.

Soon after the plaintiffs purchased their stock index contracts, the stock market index began to fall. On Monday, 19 October 1987, the S & P index dropped 23%. That afternoon, Moss was informed by Ed Caulfield, a securities broker at Bradford, that Bradford had issued a margin call. To raise money to meet the margin call, Moss brought 23,988 shares of Southern National Corporation [SNC] stock to Caulfield as collateral to secure a loan from Bradford. Because Exchange rules do not allow over-the-counter stock, such as the SNC stock, to be used to satisfy a margin call, the SNC stock had to be deposited in Moss's account and used as collateral for a loan from Bradford.

On Tuesday, 20 October 1987, at about 8:00 A.M., Charles Manning, a futures broker at Bradford, issued a new margin call for plaintiffs' accounts for $105,000. That same morning, Manning turned over the task of monitoring plaintiffs' accounts to Roy Leslie, of defendants' Nashville office. Moss told Caulfield that he would be arriving with $65,000 to meet the margin call. Leslie instructed Caulfield to sell $40,000 worth of Moss's SNC stock to add to the $65,000 Moss was bringing in to meet the $105,000 margin call.

Leslie testified that, on the morning of 20 October 1987, he believed that the $65,000 which Moss was bringing, combined with the $40,000 from the anticipated sale of the SNC stock, would satisfy that morning's margin call. Furthermore, Leslie also testified that it was not unusual for J.C. Bradford to give investors at least a full business day to meet margin calls. At no time on the morning that the accounts were liquidated was Moss informed by defendants that he must meet the margin call within a prescribed time or that the $65,000 he told Caulfield he was bringing would not meet the margin call.

Between 11:00 and 11:10 a.m. on Tuesday, 20 October 1987, the index was at 210-212 points. At 11:09 a.m., Leslie informed Caulfield that the market was deteriorating and that Leslie was

entering a stop loss order to sell the seven contracts should the Index hit 190. About 15 to 20 minutes later, the Index dropped to 190 and the plaintiffs' contracts were sold.

Taking the evidence in the light most favorable to the plaintiffs, the evidence tended to show that (1) the parties' contract obligated defendants to make a margin call upon plaintiffs, and give plaintiffs a reasonable time in which to meet the margin call, before liquidating plaintiffs' accounts; (2) that, at the time defendants liquidated plaintiffs' accounts, Moss was making a good faith effort to meet the margin call; (3) that at least one of defendants' agents believed that Moss's actions would sufficiently satisfy the 20 October 1987 margin call; and (4) that Moss was not informed by defendants that, by not arriving with the funds before 11:15 A.M. on Tuesday, he risked liquidation. From the foregoing evidence, the jury could reasonably have concluded that in liquidating plaintiffs' accounts, defendants breached the terms of the customer agreement.

Accordingly, we hold that the trial court properly denied defendants' motions for directed verdict and motion for judgment notwithstanding the verdict, or in the alternative, a new trial.

[2] Lastly, defendants contend that the trial court erred by refusing to instruct the jury in accordance with defendants' proposed jury instructions. Before charging the jury, the trial court refused the defendants' timely request for two special instructions to instruct the jury that (1) if plaintiffs had not met an outstanding margin call, defendants had no duty to issue a new margin call before liquidating plaintiffs' accounts and (2) if plaintiffs were in debt at the time defendants liquidated plaintiffs' accounts, defendants had no duty to refrain from liquidating the accounts.

The trial court's instructions, as given, fully and fairly presented the issue asserted in defendants' requested instructions, and it therefore was not prejudicial to defendants to refuse their special request. *See, Rowan County Bd. of Education v. U.S. Gypsum Co.*, 103 N.C. App. 288, 407 S.E.2d 860, *review on additional issues allowed*, 330 N.C. 121, 409 S.E.2d 601, *and affirmed in part, review improvidently granted in part*, 332 N.C. 1, 418 S.E.2d 648 (1992); *Alston v. Monk*, 92 N.C. App. 59, 373 S.E.2d 463, *rev. denied*, 324 N.C. 246, 378 S.E.2d 420 (1989).

## Plaintiffs' Cross-Appeal

[3]  In their only assignment of error, plaintiffs contend that the trial court erred in failing to find, as a matter of law, that one day was a reasonable window of opportunity to consider when assessing plaintiffs' damages. Both parties to this appeal agree that, following a wrongful liquidation, damages are determined by finding the difference between the price at which the securities were wrongfully liquidated and the highest intermediate price the securities reached between the time of the wrongful dissolution and a reasonable time thereafter to allow the injured party to reenter the market. *Schultz v. Commodity Futures Trading Com'n*, 716 F.2d 136 (2d Cir. 1983).

The parties are in dispute over what constitutes a "reasonable time" during which to assess plaintiffs' damages. Plaintiffs contend that, by arriving at $175,000 in damages, the jury must have considered a "window of reentry" of less than one business day. Plaintiffs contend that had the jury considered even one full day to be a reasonable period over which to assess damages, the damages awarded would have properly been $242,000. Plaintiff goes on to contend that, as a matter of law, one business day is the minimum amount of time a jury could reasonably consider when assessing damages after a wrongful liquidation.

While under normal conditions, giving the plaintiffs at least one business day in which to reenter the market at the defendants' expense may well be very reasonable. However, under the extremely volatile market conditions that existed on 20 October 1987, we cannot say that, as a matter of law, it would be unreasonable for a fact-finder to determine that some period less than one full day would be an appropriate window of opportunity to consider when assessing plaintiffs' damages. Therefore, we find no error in the trial court's denial of plaintiffs' motion for judgment notwithstanding the verdict.

No error.

Judges GREENE and WYNN concur.