WALTER B. CARPENTER, ADMINISTRATOR, v. ASHEVILLE POWER &
LIGHT COMPANY.

(Filed 27 January, 1926.)

**1. Electricity—Negligence—Evidence—Nonsuit.**

Evidence that an electric power company furnished a lower voltage
of electricity for domestic purposes by transferring it from wires carry-
ing a higher and deadly voltage, and that plaintiff's intestate, his wife,
was killed by this higher voltage passing along the wires in her home,
while engaged in her domestic duties: *Held*, sufficient of defendant's
actionable negligence to deny its motion as of nonsuit.

**2. Damages—Evidence—Offer of Employment.**

Upon the issue of the measure of damages in an action for a wrongful
death: *Held*, evidence that plaintiff's intestate had received an offer to
sing in a church choir for twenty-four hundred dollars a year, unac-
cepted, was incompetent.

**3. Evidence—Instructions—Appeal and Error—Prejudice.**

Material evidence upon an issue wrongfully admitted will not be con-
sidered as nonprejudicial, when emphasized by the judge in his charge
to the jury.

**4. Damages—Wrongful Death—Negligence—Measure of Damages.**

The damages recoverable for the wrongful death of another negligently
caused, is the net present pecuniary worth of the deceased, to be ascer-
tained by deducting the probable cost of his own living and his ordinary
or usual expenses, from the probable gross income derived from his own
exertions, based upon his life expectancy. C. S., 161.

**5. Same—State Statutes—Descent and Distribution—Federal Statutes.**

Under our State statute allowing the recovery of damages for a wrong-
ful death, the amount is to be disposed of as provided for the distribu-
tion of personal property in case of intestacy, while under the Federal
statute, the damages are based on the pecuniary loss of those made the
beneficiaries under the provisions of the statute.

APPEAL by defendant from *Stack, J.*, at April Special Term, 1925,
of BUNCOMBE.

Civil action to recover damages for an alleged wrongful death caused
by the defendant's alleged negligence in failing properly to "ground" its
transformers, or secondary system, used in connection with its sale and
distribution of electric current for household and commercial purposes.

Plaintiff's intestate, a young woman thirty years of age, wife and
mother, highly educated, peculiarly gifted in music, and of good health,
was killed on 7 November, 1923, in the kitchen of her home while dis-
charging some household duty, by coming in contact with an excessive
electric current flowing over the wires of the defendant and which were

connected with plaintiff's home under a contract to supply his house with electricity for domestic purposes.

The defendant in the operation of its business maintains two sets of wires—one, comprising its primary system, running from its powerhouse to transformers and carrying an electric current of 2200 volts or more, the other, known as its secondary system, running from the transformers, where the voltage is "kicked down" to a current of 110 volts, to the homes of its customers for use in lighting and operating small motors, etc. The transformer near the plaintiff's house, it is alleged, failed to operate, or to reduce the current from the higher to the lower voltage, and in consequence of which the higher voltage was transmitted over the secondary wires to plaintiff's home and caused the death of his wife. The negligence alleged consists in the failure of the defendant to have its transformers "grounded" so as to convey the deadly current to the ground, rather than over its secondary wires, in case a transformer failed to operate, or in case the primary wires came in contact with the secondary wires, as they did in the instant case.

Upon denial of liability and issues joined, the jury returned the following verdict:

"1. Was plaintiff's intestate killed by the negligence of the defendant, as alleged in the complaint? Answer: Yes.

"2. What damages, if any, is plaintiff entitled to recover of the defendant? Answer: $35,000.

From a judgment on the verdict for plaintiff, the defendant appeals, assigning errors.

*Harkins & Van Winkle and Mark W. Brown for plaintiff.*
*Martin, Rollins & Wright for defendant.*

STACY, C. J. The exception addressed to the refusal of the court to grant the defendant's motion for judgment as of nonsuit cannot be sustained. The evidence was sufficient to carry the case to the jury. The motion was properly overruled on authority of *McAllister v. Pryor,* 187 N. C., 832, where the question is fully discussed in a valuable opinion by *Associate Justice Clarkson.*

But we think the trial court committed error, prejudicial to the defendant, in the admission, over objection, of the evidence of Dr. Ambler, father of plaintiff's intestate, to the effect that he had seen a letter from a Mr. Harker, written to his daughter prior to her marriage and seven or eight years before her death, offering her $2,400 a year to sing in Richmond, Va., with the promise that her salary would be increased to $3,000 per annum at the end of the first year. The offer was not accepted and the letter was not in evidence. In fact, plaintiff's intestate

never sang for money at any time. This testimony was incompetent and should have been excluded. As said in *Chandler v. Marshall,* 189 N. C., 301, "This is not the kind of evidence to be sanctioned by our courts of justice, for the determination of the rights of litigants." In addition to violating the rule against hearsay, it contains evidence of an unaccepted offer, the reception of which is very generally disapproved by the authorities on the subject. *Canton v. Harris,* 177 N. C., 10, and cases there cited.

Nor can we hold the admission of this evidence to be harmless error, as suggested by plaintiff, for in delivering his charge to the jury, the judge specifically called attention to it in the following manner: "The plaintiff contends that Mrs. Carpenter was only about thirty years of age; that she was an educated and intelligent woman, and had a potential power to make much money; that she had been offered $2,400 a year, with promise of increase to $3,000; that her services in the home were of great money value and he cannot supply them except at a high price." From this, it will be seen that the incompetent testimony of Dr. Ambler was fully submitted to the jury on the issue of damages. Defendant is entitled to a new trial because of this error.

The amount of damages which may be recovered in cases arising under C. S., 160, for the death of a person, caused by the wrongful act, neglect or default of another, is fixed by C. S., 161, at "such damages as are a fair and just compensation for the pecuniary injury resulting from such death." There is a marked distinction between the measure of damages in cases for wrongful death arising under the Federal Employers' Liability Act and in such cases arising under the State law. Under the State statute, giving a right of action for wrongful death, the damages are based on the present worth of the net pecuniary value of the life of the deceased (*Horton v. R. R.,* 175 N. C., 477), and the amount recovered in such action is to be disposed of as provided for the distribution of personal property in case of intestacy (*Hood v. Tel. Co.,* 162 N. C., 92), while under the Federal act, the damages recoverable are based on the pecuniary loss sustained by the beneficiaries. *Cobia v. R. R.,* 188 N. C., p. 493. Under the State law, the damages for the pecuniary worth of the deceased are to be ascertained by deducting the probable cost of his own living and usual or ordinary expenses from the probable gross income derived from his own exertions based upon his life expectancy. *Purnell v. R. R.,* 190 N. C., 573. And in ascertaining these damages, the jury is at liberty to take into consideration the age, health and expectancy of life of the deceased, his earning capacity, his habits, his ability and skill, the business in which he was employed and the means he had for making money—the end of it all being to enable the jury fairly to determine the net income which the deceased might reason-

ably have been expected to earn, had his death not ensued. In *Benton v. R. R.,* 122 N. C., 1007, the following instruction was approved: "To enable the jury properly to estimate the reasonable expectation of pecuniary advantage from the continuance of the life of the deceased, they should consider his age, habits, industry, means, business qualifications, skill, and his reasonable expectation of life." It is only the present worth of the pecuniary injury resulting from the wrongful death of the deceased that may be awarded the plaintiff. It is not the equivalent of human life that is to be given, nor is punishment to be inflicted, or anger to be appeased, or sorrow to be assuaged, but only a fair and just compensation for the pecuniary injury resulting from the death of the deceased is to be awarded. *Mendenhall v. R. R.,* 123 N. C., 275; *Russell v. Steamboat Co.,* 126 N. C., 961; *Watson v. R. R.,* 133 N. C., 188; *Gerringer v. R. R.,* 146 N. C., 32; *Ward v. R. R.,* 161 N. C., 186; *Gurley v. Power Co.,* 172 N. C., 695.

There are other exceptions appearing on the record worthy of consideration, but as they are not likely to occur on another hearing, we shall not consider them now. For the error as indicated, there must be a new trial, and it is so ordered.

New trial.