HARRIETTE FLOYD and ROBERT J. FLOYD, Plaintiffs-Appellees v. STEPHANIE L. McGILL, TRANSIT MANAGEMENT OF CHARLOTTE, INC., and the CITY OF CHARLOTTE, Defendants-Appellants

No. COA02-372

(Filed 4 February 2003)

### 1. Husband and Wife— loss of consortium—husband's claim— prior settlement of claim for husband's personal injuries

The trial court did not err in submitting plaintiff husband's claim for loss of consortium to the jury in plaintiff wife's personal injury case arising out of an automobile accident, even though plaintiffs had settled a separate lawsuit against defendants seeking damages for the husband's personal injuries, where the husband's claim for loss of consortium was joined with the wife's negligence claim, because: (1) each party who suffers a loss of consortium is entitled to institute a suit to recover for his or her individual loss; and (2) recovery for loss of consortium is not limited to one claim per marital unit.

### 2. Motor Vehicles— automobile accident—negligent training of bus driver

The trial court did not err in a personal injury case arising out of an automobile accident by submitting the issue of negligent training of defendant bus driver to the jury, because there was sufficient evidence presented at trial to allow the jury to conclude that defendant bus company was negligent in its training of defendant driver.

### 3. Motor Vehicles— automobile accident—inadequate brakes—failure to maintain brakes

The trial court did not err in a personal injury case arising out of an automobile accident by submitting to the jury the issues of inadequate brakes and failure to maintain the brakes, because the jury was able to weigh the evidence and determine whether defendant bus company met its duty of care in operating the bus and maintaining the brakes.

### 4. Damages and Remedies— automobile accident—medical expenses

The trial court did not err in a personal injury case arising out of an automobile accident by submitting to the jury the issue of damages regarding medical expenses, because the evidence

FLOYD v. McGILL

[156 N.C. App. 29 (2003)]

was sufficient to allow the jury to decide the expenses were necessary and reasonable and that they resulted from defendants' negligence.

**5. Appeal and Error— preservation of issues—failure to object at trial**

Although defendants contend the trial court erred in a personal injury case arising out of an automobile accident by allowing plaintiff wife's attorney to state that plaintiff incurred actual and projected medical expenses of approximately $330,000, this issue was not preserved for appellate review because defendants failed to object to this statement at trial.

**6. Damages and Remedies— sanction—willful destruction of evidence**

The trial court did not err in a personal injury case arising out of an automobile accident by failing to set aside the verdict and judgment and by failing to order a new trial as a sanction for plaintiff wife's alleged willful destruction of evidence, because: (1) defendants cite no authority that compels or permits the trial court to order a new trial in light of destruction of evidence; and (2) defendants failed to develop their argument that plaintiff destroyed evidence in bad faith and that sanctions are warranted.

**7. Evidence— expert testimony—knowledge**

The trial court did not err in a personal injury case arising out of an automobile accident by allowing expert witnesses to testify to evidence of which they allegedly lacked knowledge or that was allegedly outside their area of expertise, because: (1) defendants failed to demonstrate that two doctors were not qualified to testify regarding biomechanics or that their opinions were confusing or unhelpful to the jury; (2) the testimony of another doctor was sufficient to permit the trial court to determine that the doctor possessed training and experience to offer an opinion regarding plaintiff wife's brain injury that would be helpful to the jury, and there was sufficient evidence presented at trial to support plaintiff's claim of brain injury; and (3) the expert in the field of cognitive rehabilitation was able to observe plaintiff and acquire knowledge about plaintiff's condition as a foundation for the expert's testimony.

FLOYD v. McGILL

[156 N.C. App. 29 (2003)]

**8. Evidence— exhibit—deposition—separate counsel not provided at deposition**

The trial court did not err in a personal injury case arising out of an automobile accident by admitting under N.C.G.S. § 1A-1, Rule 32(a)(3) defendant bus driver's deposition as an exhibit during her testimony even though defendant was not represented by separate counsel at the time of her deposition, because: (1) Rule 32(a) states that a deposition can be used against any party who was present or represented at the taking of the deposition, and defendant was present at the deposition in addition to being represented by counsel for the other two defendants; and (2) defendants fail to cite any authority that would compel the finding of any error.

**9. Appeal and Error— preservation of issues—failure to assign as error**

Although defendants contend the trial court erred in a personal injury case arising out of an automobile accident by permitting the jury to read the complete transcript of defendant bus driver's deposition, this argument is dismissed because defendants failed to assign this issue as error in the record.

**10. Motor Vehicles— automobile accident—inoperable horn and speedometer—proximate cause**

The trial court did not err in a personal injury case arising out of an automobile accident by instructing the jury that plaintiffs could recover damages based on defendant bus driver's operation of a bus with an inoperable horn and speedometer even though defendants contend there was no evidence that either of these factors was a proximate cause of the collision, because: (1) more than one inference could be drawn from the evidence; and (2) defendants failed to demonstrate that the jury instruction was erroneous and likely to mislead the jury.

Appeal by defendants from judgment entered 19 January 2001 and from order entered 16 March 2001 by Judge Jerry Cash Martin in Superior Court, Mecklenburg County. Heard in the Court of Appeals 13 November 2002.

*Chandler Workman & Hart, by W. James Chandler and W. Michael Workman, for plaintiffs-appellees.*

FLOYD v. McGILL

[156 N.C. App. 29 (2003)]

*Frank B. Aycock, III, for defendant-appellant Stephanie L. McGill.*

*Robert D. McDonnell, for defendants-appellants Transit Management of Charlotte, Inc. and the City of Charlotte.*

McGEE, Judge.

Plaintiffs filed suit on 10 December 1997 against Stephanie L. McGill (McGill), Transit Management of Charlotte, Inc. (Transit), and the City of Charlotte (the City), collectively known as "defendants," for damages arising from a rear-end collision of plaintiffs' pickup truck by a bus owned by the City. All three defendants filed an answer on 23 March 1998. Defendants filed a motion to dismiss the consortium claim of Robert J. Floyd (Mr. Floyd) on 10 October 2000. Plaintiffs amended their complaint on 9 November 2000 to include additional allegations of violations of motor vehicle statutes. Plaintiffs also filed a separate lawsuit against defendants seeking damages for personal injuries suffered by Mr. Floyd in the collision; this suit was settled prior to trial.

Evidence presented at trial tended to show the following: McGill was operating a bus owned by the City on 27 March 1996 on Independence Boulevard in Charlotte, North Carolina. As she approached an intersection, McGill saw the traffic light turn yellow and applied her brakes but the bus failed to slow down. McGill saw plaintiffs' pickup truck in the lane ahead of her and attempted to steer the bus into the right and left lanes but was blocked on both sides. She repeatedly pumped the brakes and attempted to engage the emergency brake. The bus failed to stop and collided with plaintiffs' pickup truck.

McGill had recently completed a five-week training course and was a probationary employee authorized to drive a bus. She testified that she knew the brakes were responding differently than usual and were the most inefficient brakes she had ever operated. McGill stated that throughout the day she had to apply the brakes slowly and provide additional distance to allow the bus to stop. She stated that the speedometer on the bus was not working and stated that she had to "kind of feel" her speed. She stated she was unaware it was illegal to operate a vehicle without a speedometer and was never informed of the law by her supervisors. McGill also testified the bus horn was not working and that she knew it was illegal to operate a vehicle without a functioning horn. McGill stated that she was supposed to call

the dispatcher if she experienced problems with a bus, but she could not remember if she reported the problems on the afternoon of the collision.

At the time of the collision, Randy Mullinax (Mr. Mullinax) had been employed as Transit's director of safety administration for approximately one month. He testified that drivers who discovered a problem with a bus were supposed to remove the bus from service immediately and report the problem to the dispatcher. He also testified as to the preventative maintenance schedules for buses and the designation and assignment of bus routes.

Plaintiff Harriette Floyd (Mrs. Floyd) was diagnosed with a concussion after examination in the Carolinas Medical Center emergency room following the collision. She testified that since the collision she often suffered dizziness that caused her to fall and that she had a constant high-pitched squeal in her head. Mrs. Floyd also testified that her injuries caused her to resign her job as a high school math teacher, which she had held for twenty-eight years. Mrs. Floyd stated because of the collision she had suffered a loss of friends, low energy, and elimination of exercise and outdoor activities. Dr. Young Davis, an economics expert, testified that Mrs. Floyd's lost future earnings and benefits totaled $534,454.

Dr. Otto Charles Susak, an emergency physician who treated Mrs. Floyd at Carolinas Medical Center, testified that Mrs. Floyd's post-accident condition fit into all but one of the categories for a mild brain injury. Dr. Joseph Estwanik testified that he diagnosed Mrs. Floyd with neck strain, dizziness, and mild symptoms of post-concussion headache. Dr. Ervin Batchelor (Dr. Batchelor), a neuropsychologist, diagnosed Mrs. Floyd with post-accident cognitive difficulties, including problems with concentration, reading, spelling, forgetfulness, increased irritability, and depression. Dr. Batchelor testified that Mrs. Floyd complained of ringing in her ears (tinnitus), blurred vision, headaches, and dizziness. Dr. Batchelor also testified that Mrs. Floyd would be unable to maintain any gainful employment due to her injuries.

Dr. Hemanth Rao (Dr. Rao), a neurologist, testified regarding Mrs. Floyd's injuries from the accident and agreed with Dr. Batchelor's diagnosis of head trauma and post-concussive syndrome. Dr. Rao also testified to the mechanics of Mrs. Floyd's brain injury and the causal connection between the injury and her symptoms. He also stated that he did not think Mrs. Floyd could sustain gainful employment as a

result of the injuries she suffered. Dr. Rao also estimated that Mrs. Floyd's medical expenses would range between four thousand dollars and fifteen thousand dollars per year for the remainder of her life.

Dr. Dale Brown (Dr. Brown) testified concerning Mrs. Floyd's balance problems and stated that he diagnosed her with chronic disequilibrium. He stated that she became dizzy when she turned her head and demonstrated a lack of balance in an eye-to-eye motion test. He testified that her chronic disequilibrium and tinnitus were caused by the collision and had deprived Mrs. Floyd of her quality of life.

Patricia Benfield (Ms. Benfield), a cognitive rehabilitation expert, testified concerning her evaluation and treatment of Mrs. Floyd for a brain injury. Ms. Benfield observed Mrs. Floyd in her teaching environment and testified that Mrs. Floyd lost her balance several times and had some difficulty in focusing and in assisting students. She also opined that Mrs. Floyd was overwhelmed and was experiencing difficulty in carrying out her duties as a math teacher. She further stated that she was concerned about Mrs. Floyd's competency to continue teaching.

A jury awarded Mrs. Floyd $750,000 for personal injuries and awarded Mr. Floyd $75,000 for loss of consortium in a judgment entered on 19 January 2001. Defendants moved for judgment notwithstanding the verdict and alternatively for a new trial on 24 January 2001. The trial court denied both motions on 16 March 2001. Defendants appeal.

[1] Defendants first argue the trial court erred in admitting evidence about Mr. Floyd's claim for loss of consortium and in submitting the issue to the jury. Defendants contend the release signed in the voluntary dismissal of Mr. Floyd's negligence claim settled Mr. Floyd's loss of consortium claim. Defendants argue that loss of consortium should be viewed as damage to the marital unit and thus should be the subject of only one claim rather than separate claims by each spouse.

"[A] spouse may maintain a cause of action for loss of consortium due to the negligent actions of third parties so long as that action for loss of consortium is joined with any suit the other spouse may have instituted to recover for his or her personal injuries." *Nicholson v. Hospital*, 300 N.C. 295, 304, 266 S.E.2d 818, 823 (1980). In the case before us, Mr. Floyd properly joined his loss of consortium claim with Mrs. Floyd's negligence claim. Each party who suffers a loss of consortium is entitled to institute a suit to recover for his or her individ-

ual loss. North Carolina law does not limit recovery for loss of consortium to one claim per marital unit as advocated by defendants and we decline to adopt such a rule. The trial court did not err in admitting evidence of Mr. Floyd's loss of consortium or in submitting his claim to the jury. This assignment of error is overruled.

Defendants next argue the trial court erred in submitting issues of negligence and damages to the jury.

> Our standard of review on the grant of a motion for directed verdict is "whether, upon examination of all the evidence in the light most favorable to the nonmoving party [with this] party be[ing] given the benefit of every reasonable inference drawn therefrom, the evidence is sufficient to be submitted to the jury." A directed verdict should be granted in favor of the moving party only where " 'the evidence so clearly establishes that fact in issue that no reasonable inferences to the contrary can be drawn,' and 'if the credibility of the movant's evidence is manifest as a matter of law.' "

*Culler v. Hamlett*, 148 N.C. App. 372, 374, 559 S.E.2d 195, 198 (2002) (citations omitted). "If there is such relevant evidence as a reasonable mind might accept as adequate to support the elements of negligence, the trial court must deny defendant's motion and allow the case to go to the jury." *Cobb v. Reitter*, 105 N.C. App. 218, 220-21, 412 S.E.2d 110, 111 (1992).

[2] Defendants first argue there was insufficient evidence to submit the issue of negligent training of McGill to the jury. McGill testified about the training program and stated that she was instructed to contact the dispatcher if she experienced trouble with a bus. She also testified that in her training she was not instructed that it was unlawful to operate a vehicle without a functioning speedometer. McGill could not recall the amount of classroom time she received before she began driving buses and testified that she was on the wrong route at the time of the collision. Mr. Mullinax also testified about driver training and safety procedures to be used when a driver experienced bus problems while in service. He stated that a driver who experienced mechanical problems, such as an inoperable speedometer, could finish the route before finding a location to exchange the bus.

When considered in a light most favorable to the nonmoving party, there was sufficient evidence presented at trial to allow the jury to conclude that Transit was negligent in its training of McGill.

The jury was able to weigh the evidence and determine whether Transit met its duty of care while training McGill. The trial court did not err in submitting the issue to the jury.

**[3]** Defendants next argue the trial court erred in submitting to the jury the issues of inadequate brakes and failure to maintain the brakes. McGill testified that the brakes on the bus were the worst she had ever operated and that the condition existed when she initially left the bus lot. She also testified that a bus company mechanic and her manager told her that the bus had experienced brake failure after an inspection following the accident. Mr. Mullinax also testified that the brakes were leaking and had been repaired the evening following the accident, but that the brakes were not damaged in the accident.

When considered in a light most favorable to the nonmoving party, there was sufficient evidence presented at trial to allow the jury to conclude Transit was negligent in allowing a bus to be operated with inadequate brakes and in failing to maintain the brakes. The jury was able to weigh the evidence and determine whether Transit met its duty of care in operating the bus and maintaining the brakes. The trial court did not err in submitting the issue to the jury.

**[4]** Defendants next argue the trial court erred in submitting the issue of damages to the jury. Defendants argue Mrs. Floyd failed to provide sufficient evidence of medical expenses to warrant recovery for medical expenses. Defendants also argue that Mrs. Floyd failed to prove that her medical expenses were necessary and reasonable.

"Medical bills are admissible where lay and medical testimony of causation is provided." *Smith v. Pass*, 95 N.C. App. 243, 253, 382 S.E.2d 781, 788 (1989). "[T]he treatment for which charges are incurred must be reasonably necessary, and the charges must be reasonable in amount." *Chamberlain v. Thames*, 131 N.C. App. 705, 717, 509 S.E.2d 443, 450 (1998). "[I]t remains entirely within the province of the jury to determine whether certain medical treatment was reasonably necessary." *Jacobsen v. McMillan*, 124 N.C. App. 128, 135, 476 S.E.2d 368, 372 (1996).

Evidence in the record shows that Dr. Rao, Dr. Estwanik, Dr. Batchelor, and Dr. Brown testified to Mrs. Floyd's medical treatment and resulting expenses. Dr. Rao testified that he believed all of his charges were "reasonable and necessary based on treatment rendered following the motor vehicle accident." Defendants stipulated

to the charges for Dr. Estwanik's medical services. Dr. Batchelor testified to the "reasonably anticipated and necessary costs" of lifetime treatment for Mrs. Floyd's injuries. Dr. Brown testified that his charges were "reasonable and customary . . . to deal with the condition which [he] found in [Mrs. Floyd]." This testimony provided an evidentiary basis for Mrs. Floyd's past and anticipated future medical bills to permit the jury to decide the issue of damages.

When considered in a light most favorable to the nonmoving party, there was sufficient evidence presented at trial to permit the jury to decide the issue of damages. The evidence was sufficient to allow the jury to decide the expenses were necessary and reasonable and that they resulted from defendants' negligence. The trial court did not err in submitting the issue to the jury.

[5] Defendants also argue they were prejudiced by Mrs. Floyd's counsel's statement that Mrs. Floyd incurred actual and projected medical expenses of approximately $330,000. Defendants failed to object to this statement at trial and therefore failed to preserve the issue for appellate review. N.C. R. App. P. 10(b)(1).

[6] Defendants next argue the trial court erred in failing to set aside the verdict and judgment and failing to order a new trial as a sanction for Mrs. Floyd's willful destruction of evidence. Defendants cite no authority that compels or permits the trial court to order a new trial in light of destruction of evidence. Defendants cite cases that merely discuss the inferences that may be drawn at trial in the event a party destroys evidence. *See Maraman v. Cooper Steel Fabricators*, 146 N.C. App. 613, 555 S.E.2d 309 (2001), *aff'd in part, rev'd in part*, 355 N.C. 482, 562 S.E.2d 420 (2002); *Red Hill Hosiery Mill, Inc. v. Magnetek, Inc.*, 138 N.C. App. 70, 530 S.E.2d 321, *disc. review denied* 353 N.C. 268, 546 S.E.2d 112 (2000). Additionally, defendants fail to develop their argument that Mrs. Floyd destroyed evidence in bad faith and that sanctions are warranted. Defendants have failed to demonstrate a basis for granting a new trial on this issue. This assignment of error is without merit.

[7] Defendants next argue the trial court erred in allowing expert witnesses, medical providers, and lay witnesses to testify to evidence of which they lacked knowledge or that was outside their area of expertise. Defendants contend Dr. Rao, Dr. Batchelor, and Dr. Brown lacked the expertise to testify to the biomechanics of a closed head injury and were not qualified to offer an opinion on the issue of causation.

N.C. Gen. Stat. § 8C-1, Rule 702(a) (2001) permits the admission of expert testimony if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." "The determination of the admissibility of expert testimony is within the sound discretion of the trial judge and will not be disturbed on appeal absent abuse of discretion." *Braswell v. Braswell*, 330 N.C. 363, 377, 410 S.E.2d 897, 905 (1991).

The trial transcript shows that Dr. Rao was tendered as an expert in the field of neurology without objection. The record also shows that defendants stipulated to Dr. Brown's tender as an expert in otolaryngology. Dr. Rao and Dr. Brown testified regarding their respective clinical experiences in treating victims of brain injury. Dr. Rao testified that neurologists specialize in the treatment of problems affecting the nervous system. Similarly, Dr. Brown testified that otolaryngologists specialize in treatment of problems affecting the head and neck. Both Dr. Rao and Dr. Brown have appropriate educational and clinical backgrounds to qualify them as experts. Defendants have failed to demonstrate that Dr. Rao or Dr. Brown were not qualified to testify regarding biomechanics or that their opinions were confusing or unhelpful to the jury. We believe the respective specialty of each expert encompasses biomechanics and qualifies them to offer an opinion regarding Mrs. Floyd's brain injury.

Dr. Batchelor was tendered as a witness in neuropsychology over defendants' objection. Dr. Batchelor testified to his educational background and clinical experience in treating individuals with brain injuries. Dr. Batchelor also testified that he had training and experience in neurology and medicine but did not possess a medical degree in either of those fields. The trial court conducted a voir dire examination of Dr. Batchelor and determined that he was qualified to offer expert testimony.

In *Curry v. Baker*, 130 N.C. App. 182, 502 S.E.2d 667, *disc. review denied*, 349 N.C. 355, 517 S.E.2d 890 (1998), this Court found no error when a neuropsychologist testified to the brain injuries suffered by the plaintiff in a car accident. We found that there was sufficient evidence in the record independent of the neuropsychologist's testimony to warrant submission of the claim to the jury. The reports of three doctors who had treated the plaintiff and diagnosed him with traumatic brain injury were admitted into evidence during the neuropsychologist's testimony. The neuropsychologist's testimony served to corroborate the conclusions of those doctors who had examined and diagnosed the plaintiff. *Id.* at 188, 502 S.E.2d at 672-73. Additionally,

the defendants in *Curry* "did not demonstrate that the conditions afflicting plaintiff were caused by anything other than the collision or dispute that these types of conditions are commonly associated with traumatic brain injury." *Id.* (citing *Goble v. Helms*, 64 N.C. App. 439, 307 S.E.2d 807 (1983), *disc. review denied*, 310 N.C. 625, 315 S.E.2d 690 (1984)).

In the present case, Dr. Batchelor's testimony served to corroborate the testimony of Dr. Rao and Dr. Brown regarding Mrs. Floyd's brain injury. Dr. Batchelor testified that he had received training and education in the field of neurology sufficient to render him qualified to testify to issues in this field. Dr. Batchelor's testimony was sufficient to permit the trial court to determine that Dr. Batchelor possessed training and experience to offer an opinion regarding Mrs. Floyd's brain injury that would be helpful to the jury. Additionally, defendants failed to demonstrate that Mrs. Floyd's conditions arose from other circumstances. There was sufficient evidence presented at trial to support her claim of brain injury, thereby rendering any error in the admission of Dr. Batchelor's testimony harmless. This assignment of error is overruled.

Defendants argue the trial court erred in admitting the testimony of Ms. Benfield. Defendants argue that no foundation was laid for Ms. Benfield's evaluation of Mrs. Floyd's condition. N.C. Gen. Stat. § 8C-1, Rule 703 (2001) states that "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing."

Ms. Benfield was tendered as an expert witness in the field of cognitive rehabilitation. Ms. Benfield testified extensively to her education and background as a cognitive and vocational rehabilitation therapist and the trial court properly tendered her as an expert. *See Braswell*, 330 N.C. at 377, 410 S.E.2d at 905. Ms. Benfield subsequently testified to her discussions with Dr. Batchelor regarding Mrs. Floyd's brain injury and her evaluation and treatment of Mrs. Floyd both inside and outside of Mrs. Floyd's work environment. The record shows that Ms. Benfield was able to observe Mrs. Floyd and acquire knowledge about Mrs. Floyd's condition as a foundation for her testimony. This assignment of error is without merit.

**[8]** Defendants next argue the trial court erred in admitting McGill's deposition as an exhibit during her testimony. N.C. Gen. Stat. § 1A-1, Rule 32(a)(3) (2001) states that the "deposition of a party . . . may be used by an adverse party for any purpose, whether or not the depo-

nent testifies at the trial or hearing." Any part of a party's deposition or all of a party's deposition may be used against the party "so far as admissible under the rules of evidence applied as though the witness were then present and testifying." Rule 32(a).

In the case before us, McGill's deposition was admitted during her testimony at trial in accordance with Rule 32(a). Defendants do not assign error to the admission of her deposition based on violations of the rules of evidence.

Defendants contend that McGill was deprived of her procedural rights because she was not represented by separate counsel at the time of her deposition. Defendants argue that these circumstances show McGill was essentially without counsel during her deposition, thus prohibiting her deposition from being admitted at trial. Rule 32(a) states that a deposition can be used against "any party who was present or represented at the taking of the deposition." McGill was present at her deposition in addition to being represented by counsel for the City and for Transit. Accordingly, the admission of McGill's deposition was proper under Rule 32(a). Additionally, defendants fail to cite any authority that would compel us to find error as argued by defendants. This argument is overruled.

[9] Defendants also contend the trial court erred in permitting the jury to read the complete transcript of McGill's deposition. "[T]he scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal." N.C. R. App. P. 10(a). Defendants failed to assign error in the record to the trial court's decision to permit the jury to read the deposition. Accordingly, we do not address this argument.

[10] Defendants argue the trial court erred in instructing the jury that plaintiffs could recover damages based on McGill's operation of a bus with an inoperable horn and speedometer. Defendants argue there was no evidence that either of these factors was a proximate cause of the collision.

On appeal, this Court considers a jury charge contextually and in its entirety. The charge will be held to be sufficient if "it presents the law of the case in such manner as to leave no reasonable cause to believe the jury was misled or misinformed. . . ." The party asserting error bears the burden of showing that the jury was misled or that the verdict was affected by an omitted instruction. "Under such a standard of review, it is not enough for

the appealing party to show that error occurred in the jury instructions; rather, it must be demonstrated that such error was likely, in light of the entire charge, to mislead the jury."

*Bass v. Johnson*, 149 N.C. App. 152, 160, 560 S.E.2d 841, 847 (2002) (citations omitted).

Proximate cause is an inference of fact to be drawn from other facts and circumstances.

It is only when the facts are all admitted and only one inference may be drawn from them that the court will declare whether an act was the proximate cause of an injury or not. . . . "[W]hat is the proximate cause of an injury is ordinarily a question for the jury."

*Hairston v. Alexander Tank and Equipment Co.*, 310 N.C. 227, 234-35, 311 S.E.2d 559, 566 (1984) (quoting *Conley v. Pearce-Young-Angel Co.; Rutherford v. Pearce-Young-Angel Co.*, 224 N.C. 211, 214, 29 S.E.2d 740, 742 (1944)).

The evidence presented at trial permitted more than one inference to be drawn regarding the issue of proximate cause. The evidence demonstrates that McGill operated a bus with an inoperable speedometer and horn in violation of North Carolina motor vehicle statutes. The trial court instructed the jury that it could find that either of these facts was the proximate cause of the collision but did not require the jury to find proximate cause on these facts. The trial court properly permitted the jury to draw inferences from these facts and decide the issue of proximate cause. Since more than one inference could be drawn from the evidence, submission of the issue to the jury was appropriate. Defendants have failed to demonstrate that the jury instruction given by the trial court was erroneous and likely to mislead the jury. This assignment of error is without merit.

We have reviewed defendants' remaining arguments and assignments of error and find them to be without merit.

No error.

Chief Judge EAGLES and Judge HUDSON concur.