SHIRLEY T. WILLIAMS, EXECUTRIX OF THE ESTATE OF RAYMOND W. WILLIAMS, PLAINTIFF v. CSX TRANSPORTATION, INC., DEFENDANT

No. COA05-488

(Filed 7 March 2006)

**1. Evidence— cross-examination—expert witness—impeachment—opening the door**

The trial court did not abuse its discretion in a negligence case arising out of plaintiff's exposure to asbestos at work by denying defendant the opportunity to cross-examine plaintiff's pathology expert regarding tests he ordered and reviewed, by allowing plaintiff to cross-examine and impeach defendant's expert, by admitting testimony about photographs of a steam era locomotive, and by allowing plaintiff to cross-examine his own witness by playing the cross-examination of a doctor's videotaped deposition which was initially taken by defendant, because: (1) the trial court held defendant to its pretrial agreement by preventing the cross-examination of plaintiff's nontestifying consulting pathology expert since the work product report would not be in evidence and questioning about the report would cause the jury to speculate on its content; (2) plaintiff was allowed to impeach defendant's expert regarding his lack of reliance on fiber burden analysis in an earlier case as this was contrary to his testimony in the present case that such evidence was the gold

WILLIAMS v. CSX TRANSP., INC.

[176 N.C. App. 330 (2006)]

standard, and plaintiff was allowed to use a tissue report to impeach defendant's expert since it was admitted for the limited purpose of impeaching the expert; (3) testimony about photographs of a steam era locomotive were admissible as relevant rebuttal evidence when defense expert opened the door to this evidence, and assuming arguendo that the ruling was error, the testimony elicited was not helpful to plaintiff's position; and (4) the direct and cross-examination testimony in the deposition of a videotaped expert did not make the expert either party's witness until the deposition was introduced at trial, and further, defendant enjoyed the advantage of having its own examination of the expert played by withdrawing its objections to the playing of the deposition.

2. **Evidence; Witnesses— testimony—medical opinions—qualifications—causation—asbestos exposure—lay witness**

The trial court did not abuse its discretion in a negligence case arising out of plaintiff's exposure to asbestos at work by admitting testimony about causation and exposure by permitting nonphysicians including a cell biologist and an epidemiologist to provide expert medical opinions as to causation, and by allowing lay witnesses' testimony regarding asbestos exposure, because: (1) the two witnesses were qualified by experience, training, and education with specialized scientific knowledge regarding the development of mesothelioma; and (2) the testimony of plaintiff's former coworkers was rationally based on these lay witnesses's perceptions of their working conditions.

3. **Evidence— testimony—medical literature concerning dangers of asbestos exposure—foreseeability—actual or constructive knowledge**

The trial court did not err in a negligence case arising out of plaintiff's exposure to asbestos at work by admitting testimony regarding the medical literature concerning the dangers of asbestos exposure without requiring a showing that defendant had actual or constructive knowledge about the potential harm, because: (1) from the medical literature presented, the jury could infer that defendant had knowledge of the harm from asbestos; and (2) there was testimony that even after OSHA regulations required that workers be protected from asbestos exposure, plaintiff and his coworkers were not informed about ways to protect themselves.

WILLIAMS v. CSX TRANSP., INC.

[176 N.C. App. 330 (2006)]

**4. Negligence— failure to instruct—contributory negligence—specific contentions**

The trial court did not err in a negligence case arising out of plaintiff's exposure to asbestos at work by failing to instruct the jury on contributory negligence and defendant's specific contentions, because: (1) although defendant contends plaintiff's history of smoking was a factor meriting a contributory negligence instruction, it is well established that smoking and mesothelioma are not related; and (2) considering the instructions as a whole, defendant's contentions were adequately given to the jury in substance.

**5. Negligence— motion for new trial—motion for directed verdict—motion for judgment notwithstanding verdict**

The trial court did not err in a negligence case arising out of plaintiff's exposure to asbestos at work by denying defendant's post-trial motions for a new trial, directed verdict, and judgment notwithstanding the verdict, because: (1) the evidence in the case contained a genuine issue of material fact as to causation due to conflicting expert testimony, and the trial court appropriately allowed expert testimony on both sides; (2) the trial court did not abuse its discretion by calling a two-week recess in the trial since the parties were well informed of and did not object to the trial court's time restraints at either the outset of trial or at the time of the recess; and (3) the trial court found the amount of damages awarded by the jury was justified by the evidence and that defendant had agreed to the jury charge regarding damages, and no substantial miscarriage of justice would result from upholding the trial court's ruling denying defendant's motion for a new trial.

Appeal by defendant from judgment entered 1 October 2004 and orders entered 6 January 2005 by Judge B. Craig Ellis in Scotland County Superior Court. Heard in the Court of Appeals 9 January 2006.

*Jones Martin Parris & Tessener Law Offices, P.L.L.C., by H. Forest Horne, Jr. and E. Spencer Parris, for plaintiff-appellee.*

*Millberg, Gordon & Stewart, P.L.L.C., by Frank J. Gordon, and Jordan & Moses, by Randall A. Jordan and Mary Helen Moses, for defendant-appellant.*

WILLIAMS v. CSX TRANSP., INC.

[176 N.C. App. 330 (2006)]

MARTIN, Chief Judge.

Raymond Williams (Williams) filed this action against his employer, CSX Transportation, Inc. (CSX), under the Federal Employers' Liability Act (FELA), alleging that he was regularly exposed to asbestos and asbestos containing materials by CSX and that CSX failed to warn him about the dangers of asbestos exposure. He further alleged that as a direct and proximate result of CSX's negligence, and his exposure to asbestos, he developed malignant mesothelioma requiring the surgical removal of a lung. The parties stipulated that Williams worked for CSX and its predecessor railroad from 1962 until his retirement in 1999.

At trial, plaintiff Williams introduced evidence that tended to show that CSX, as a member of the Association of American Railroads (AAR), knew as early as 1937 that asbestos generated "toxic dusts." A report from the AAR annual meeting in 1937 discussed ways to identify these hazards and reduce employee exposure. In addition, there was testimony that the AAR's meeting minutes for 1958 contained information that asbestos was carcinogenic and their official industrial hygiene publication summarized articles about asbestos exposure and dust control.

Dr. John Dement, an industrial hygienist, testified that "most researchers would accept 1960 as the date" where a causal relationship between mesothelioma and asbestos exposure was definitively established. Dr. Dement further testified that the federal government, under OSHA, required air sampling and other asbestos protections beginning in the 1970s. Dr. Dement opined that information about the dangers of asbestos exposure and necessary precautions to protect workers was widely available while plaintiff worked for CSX. Williams also introduced a letter from the railroad's Chief Medical Officer, dated 1977, indicating that mesothelioma was linked to asbestos exposure.

There was evidence that CSX did not conduct any air sampling for asbestos hazards until sometime after hiring Mark Badders, CSX's first industrial hygienist in 1980. A 1986 asbestos air sampling report prepared for CSX established that asbestos dust in excess of safe levels was created when asbestos siding was cut with a saw. It also noted that these results may have been low due to other dust particles in the air sample. A 1996 survey of CSX's Hamlet, North Carolina facility, where Williams worked for the majority of his career, indicated large quantities of asbestos in pipe insulation and siding, wall,

WILLIAMS v. CSX TRANSP., INC.

[176 N.C. App. 330 (2006)]

and roof panels. Asbestos was also used in various train compo-nents, such as brakes.

Williams introduced evidence that he was exposed to asbestos dust while working around craftsmen who manipulated asbestos con-taining materials and while working around the construction, repair, and demolition of buildings containing asbestos siding. Williams and his former co-workers testified that asbestos debris was regularly cleaned up using air hoses and brooms, which moved dust into the air, and that they were never instructed by CSX to take precautions because asbestos was harmful.

Williams and his family testified that as a result of developing mesothelioma, his entire left lung was surgically removed and his stomach then migrated into his empty chest cavity and required a sec-ond surgery. He underwent several rounds of chemotherapy to treat his cancer. He also testified as to his pain, which required the daily use of pain medication.

Dr. David Harpole, Williams' lung surgeon, and Dr. John Anagnost, Williams' oncologist, both opined that Williams' asbestos exposure caused his mesothelioma. They further attested to his poor prognosis, pain, and shortened life expectancy. Cell biologist Dr. Arnold R. Brody, an expert in lung pathology, industrial hygienist Dr. Dement, and pathologist Dr. Steven Dikman all testified that Williams' exposure to asbestos caused his mesothelioma.

Williams also presented the videotaped deposition of another pathologist, Dr. Victor Roggli, who examined four sections of his lung tissue for "asbestos bodies" with an electron microscope. Dr. Roggli reported asbestos bodies counts of 37, 27, 3.3, and 3.2 in the four lung tissue samples and averaged the results of these samples to get levels of asbestos bodies that were below his laboratory's "normal" value of 20. This led him to conclude that Williams' mesolthelioma was idio-pathic, or not related to his asbestos exposure.

On cross-examination, however, Dr. Roggli also testified that his conclusion was based solely on his review of these tissue samples and that consideration of other factors would be appropriate. Dr. Roggli further explained that 94% of pleural mesotheliomas in males were caused by asbestos exposure and acknowledged the possibility that Williams' mesothelioma was related to asbestos exposure. He explained that tissue testing was not a perfect indicator and admitted asbestos fibers may have cleared from Williams' lung thereafter, ren-dering them undetectable by fiber burden analysis.

Williams presented expert testimony regarding Dr. Roggli's test results. Dr. Brody explained the ability of the lungs to clear asbestos and that fiber burden analysis and other tests for presence of asbestos in lung tissue are not the sole factor in diagnosing mesothelioma. He noted that it was not necessarily common practice to average asbestos body counts as Dr. Roggli had done and testified that in his scientific opinion the high sample amounts indicated asbestos exposure. Dr. Dement testified that even brief or low exposures of asbestos at work could be considered related to mesothelioma. Dr. Dement also testified that it was his scientific opinion that Williams' mesothelioma was attributable to occupational asbestos exposure.

At the close of Williams' evidence, CSX moved for a directed verdict, which the trial court denied. CSX then presented evidence, including expert testimony from industrial hygienists Mark Badders, Larry Liukonen and Dr. Francis Weir, pulmonary medicine experts Dr. Bernard Gee and Dr. James Crapo, pathology expert Dr. Michael Graham, and radiology expert Dr. Peter Barrett, all of whom testified to their belief that Williams' mesothelioma was not caused by asbestos exposure for which CSX could be held liable.

The parties agreed upon the jury instructions at the charge conference with the exception of defendant's request to charge the jury on comparative or contributory negligence. CSX requested a charge on "contributory" negligence, contending that plaintiff's history of smoking gave rise to the issue. The trial court denied the request, citing the fact that both Williams' and CSX's experts testified that smoking is irrelevant to the development of mesothelioma. The trial court agreed, however, to instruct the jury to consider Williams' health, habits, and constitution in determining plaintiff's life expectancy when calculating the amount of damages. Defendant also requested additional jury instructions regarding its contentions, which the trial court denied.

The jury returned a verdict by which it found that defendant CSX was negligent, that such negligence caused injury to plaintiff Williams, and that Williams had been damaged in the amount of $7,500,000.00. Defendant's motions for judgment notwithstanding the verdict and for a new trial were denied, and the judgment was entered on the verdict. After the entry of the verdict, plaintiff died and Shirley T. Williams, Executrix of the Estate of Raymond W. Williams, was substituted as plaintiff-appellee. CSX appeals.

On appeal, defendant brings forward twenty-six assignments of error in eleven arguments. Defendant argues that the trial court made numerous errors by I) allowing cross-examination of witnesses, II) admitting non-expert testimony regarding plaintiff's asbestos exposure and causation of his mesothelioma, III) admitting evidence of foreseeability without a proper foundation as·to CSX's knowledge, IV) denying defendant's requested jury instructions, and V) denying defendant's post-trial motions. After careful consideration of CSX's arguments, we find no error.

### I. Cross-examination

[1] CSX alleges four discrete errors in rulings by the trial court regarding the cross-examination of witnesses. CSX contends that the trial court erroneously 1) denied CSX the opportunity to cross-examine Williams' pathology expert, Dr. Steven Dikman, regarding tests he ordered and reviewed; 2) allowed plaintiff to cross-examine and impeach CSX expert Dr. James Crapo; 3) admitted testimony about photographs of a steam era locomotive; and 4) allowed plaintiff to cross-examine his own witness by playing the cross-examination from Dr. Roggli's videotaped deposition which was initially taken by CSX.

Rule 611(b) of the Rules of Evidence provides: "A witness may be cross-examined on any matter relevant to any issue in the case, including credibility." N.C. Gen. Stat. § 8C-1, Rule 611(b) (2005). "The trial court is vested with broad discretion in controlling the scope of cross-examination and a ruling by the trial court should not be disturbed absent an abuse of discretion and a showing that the ruling was so arbitrary that it could not have been the result of a reasoned decision." *Jones v. Rochelle*, 125 N.C. App. 82, 85-86, 479 S.E.2d 231, 233, *disc. review denied*, 346 N.C. 178, 486 S.E.2d 205 (1997). Furthermore, an expert may be required "to disclose the facts, data, and opinions underlying the expert's opinion not previously disclosed. . . . [and] may be cross-examined with respect to material reviewed by the expert but upon which the expert does not rely." *State v. Black*, 111 N.C. App. 284, 294, 432 S.E.2d 710, 717 (1993) (citation omitted).

CSX relies on *State v. Black* to support its argument that it should have been permitted to cross-examine Dr. Dikman concerning a pathology report by Dr. Gordon, despite Dr. Dikman's assertions that he did not rely on Dr. Gordon's report. Prior to trial, however, plaintiff Williams filed a motion for a protective order regarding Dr.

Gordon's status as a consulting expert pursuant to Rule 26(b)(4) of the Rules of Civil Procedure, and prior to the hearing on the motion CSX agreed not to seek information regarding Dr. Gordon. Accordingly, the trial court allowed plaintiff Williams' motion *in limine* and precluded defendant from questioning Dr. Gordon "about the work-product report that a non-testifying consulting expert prepared; especially since the work product report would not be in evidence and questioning about the report would cause the jury to speculate on its content." Thus, the trial court did not abuse its discretion in holding CSX to its pre-trial agreement and preventing the cross-examination of Dr. Dikman about Dr. Gordon, and this assignment of error is overruled.

Concerning the cross-examination of defendant's expert, Dr. Crapo, CSX contends the trial court allowed entirely unrelated and irrelevant testimony regarding Dr. Crapo's testimony as an expert witness in another case. Dr. Crapo testified at trial that fiber burden analysis was "the gold standard" test necessary for diagnosing asbestos induced mesothelioma. Dr. Crapo concluded that Williams' mesothelioma was idiopathic because Dr. Roggli's fiber burden analysis did not indicate Williams had abnormal asbestos exposure. On cross-examination, Williams sought to impeach Dr. Crapo by inquiring about his expert testimony in an earlier case in which Dr. Crapo concluded, despite a negative fiber burden analysis, that plaintiff had asbestos related mesothelioma.

"The range of facts that may be inquired into [on cross-examination] is virtually unlimited except by the general requirement of relevancy and the trial judge's discretionary power to keep the examination within reasonable bounds." *State v. Freeman*, 319 N.C. 609, 617, 356 S.E.2d 765, 769 (1987). We do not believe the trial court abused its discretion in permitting the plaintiff to impeach Dr. Crapo regarding his lack of reliance on fiber burden analysis in the earlier case as this was contrary to his testimony in the present case that such evidence was the "gold standard." Defendant also complains that the tissue report that plaintiff used to impeach Dr. Crapo should not have been admitted as it was unauthenticated hearsay. The report, however, was not admitted for the truth of the matter asserted, but for the limited purpose of impeaching Dr. Crapo. *See Sterling v. Gil Soucy Trucking, Ltd.*, 146 N.C. App. 173, 178, 552 S.E.2d 674, 677 (2001) (holding no error when admitting school records for impeachment purposes). Accordingly, this assignment of error is overruled.

Additionally, CSX complains that the trial court impermissibly admitted testimony about irrelevant photographs of steam era locomotives because the evidence was clear that Williams never worked with those trains. As noted above, the trial court controls "the nature and scope of the cross-examination in the interest of justice" and confines the testimony to competent, relevant and material evidence. *McClain v. Otis Elevator Co.*, 106 N.C. App. 45, 49, 415 S.E.2d 78, 80 (1992) (citation omitted). Evidence that is not otherwise admissible may "be offered to explain or rebut evidence elicited by the defendant," and this evidence is admissible "even though such latter evidence would be incompetent or irrelevant had it been offered initially." *Maglione v. Aegis Family Health Ctrs.*, 168 N.C. App. 49, 61, 607 S.E.2d 286, 294 (2005) (citations omitted). In determining relevant rebuttal evidence, "we grant the trial court great deference," *id.*, and we do not disturb its rulings absent an abuse of discretion "and a showing that the ruling was so arbitrary that it could not have been the result of a reasoned decision." *McClain*, 106 N.C. App. at 49, 415 S.E.2d at 80.

Dr. Weir had testified that railroad workers were not heavily exposed to asbestos in the steam era. On cross-examination, Williams' counsel apparently showed Dr. Weir a photograph of a steam locomotive, in which it appeared that workers were being exposed to an asbestos covered steam engine. The trial court overruled CSX's objection that the photograph was irrelevant. The trial court did not abuse its discretion in allowing this testimony about the photograph because Dr. Weir "opened the door." Even assuming *arguendo* the ruling was in error, we note that the testimony elicited was not helpful to plaintiff's position. Dr. Weir stated that the asbestos on a steam engine was inert and did not subject the workers to the risk of contracting asbestos disease, helping to explain why in his opinion defendant was unaware of asbestos disease in the early 1930s. CSX could not have been prejudiced, and this argument is overruled.

Finally, CSX complains the trial court erroneously allowed plaintiff Williams to play the videotaped cross-examination of Dr. Roggli because Williams had adopted Dr. Roggli as his witness. According to Rule 32 of the Rules of Civil Procedure:

A party does not make a person his own witness for any purpose by taking his deposition. The introduction in evidence of the deposition or any part thereof for any purpose other than that

of contradicting or impeaching the deponent makes the deponent the witness of the party introducing the deposition.

N.C. Gen. Stat. § 1A-1, Rule 32(c) (2005).

The direct and cross-examination testimony in the deposition did not make Dr. Roggli either party's witness until the deposition was introduced at trial. While it is generally true that a party cannot lead its own witness, "it is firmly entrenched in the law of this State that it is within the sound discretion of the trial judge to determine whether counsel shall be permitted to ask leading questions, and in the absence of abuse the exercise of such discretion will not be disturbed on appeal." *State v. Greene*, 285 N.C. 482, 492, 206 S.E.2d 229, 235 (1974).

Here, plaintiff Williams informed the trial court of his intent to offer the videotaped deposition of Dr. Roggli, who was originally deposed by CSX and cross-examined by plaintiff. Williams informed the trial court prior to playing the videotape that CSX might need to be heard; however, CSX withdrew its objections. Then, after the direct examination portion of the videotaped deposition played, CSX objected to playing the cross-examination, arguing that plaintiff had adopted Dr. Roggli as his witness and, therefore, could not play the cross-examination since Williams would be leading his own witness. Defendant has not shown the trial court abused its discretion in permitting the plaintiff to play the cross-examination portion of Dr. Roggli's deposition, especially since CSX enjoyed the advantage of having its own examination of Dr. Roggli played by withdrawing its objections to the playing of the deposition. "A party may not complain of action which he induced." *Frugard v. Pritchard*, 338 N.C. 508, 512, 450 S.E.2d 744, 746 (1994). Therefore, we overrule this assignment of error.

## II. Causation and Exposure

[2] Next, CSX maintains that the trial court erroneously admitted testimony about causation and exposure by 1) permitting non-physicians Dr. Brody and Dr. Dement, a cell biologist and an epidemiologist respectively, to provide expert medical opinions as to causation, and 2) allowing lay witnesses' testimony regarding asbestos exposure.

CSX contends that the medical opinions offered by plaintiff Williams' physicians were not admissible because their testimony "reflected an unscientific analysis and investigation" about the cause

of his mesothelioma due to their reliance on Williams' assertions regarding his exposure to asbestos. Defendant also maintains that in an effort to bolster the medical doctors' contentions, the trial court also erroneously admitted improper testimony from Drs. Brody and Dement regarding causation.

If the trial court determines that "scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion." N.C. Gen. Stat. § 8C-1, Rule 702 (2005). We review a trial court's admission of expert testimony for abuse of discretion. *Floyd v. McGill*, 156 N.C. App. 29, 38, 575 S.E.2d 789, 795, *disc. review denied*, 357 N.C. 163, 580 S.E.2d 364 (2003). Expert testimony is not "limited to those witnesses who are licensed in some particular field of endeavor, nor limited by whether such witnesses employ their skills professionally or commercially." *Maloney v. Hospital Systems*, 45 N.C. App. 172, 178, 262 S.E.2d 680, 684, *disc. review denied*, 300 N.C. 375, 267 S.E.2d 676 (1980). This Court has previously declined to establish "a preferred or exclusive class among medical expert witnesses." *Id.*

Dr. Brody is the vice chairman of the pathology department at Tulane University Medical School, and he earned a Ph.D. in cell biology. Prior to going to work at Tulane, he was the head of the Lung Pathology Laboratory at the National Institute of Environmental Health Sciences for fifteen years. He is published in peer-reviewed journals and medical textbooks and has been studying asbestos diseases and pathology since 1974. Dr. Dement is a research professor in Environmental Medicine at Duke University, who works as an industrial hygienist and epidemiologist. He has a masters degree in industrial hygiene from the Harvard School of Public Health and an Ph.D. from the University of North Carolina at Chapel Hill, and he has worked in the field for over thirty years. His doctoral research focused on the relationship between occupational asbestos exposure and mesothelioma, and he is widely published in peer-reviewed journals. Moreover, defendant did not object to his qualifications as an expert in his field. The trial court did not err in concluding that Dr. Brody and Dr. Dement were qualified by experience, training, and education with specialized scientific knowledge regarding the development of mesothelioma. Nor did it abuse its discretion in permitting their testimony. This argument is overruled.

**WILLIAMS v. CSX TRANSP., INC.**

[176 N.C. App. 330 (2006)]

Defendant also argues that plaintiff's former co-workers provided improper lay opinion testimony. We disagree. Lay witnesses can testify in the form of opinions or inferences "which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." N.C. Gen. Stat. § 8C-1, Rule 701 (2005). Here, Jimmy Strickland and Robert McEwen testified that they regularly worked with asbestos, which was brittle and frequently crumbled, creating dust, in the shops that Williams supervised. As a result, Williams was exposed to this dust. We hold this testimony was rationally based on these lay witnesses' perception of their working conditions. Thus, the trial court did not err in admitting this testimony.

### III. Foreseeability

[3] Next, CSX contends the trial court erred by admitting testimony regarding the medical literature concerning the dangers of asbestos exposure without requiring a showing that CSX had actual or constructive knowledge about the potential harm. "[A]n employer will not be held liable for an employee's injury if it had no reasonable way of knowing about the hazard that caused the injury." *McKeithan v. CSX Transportation, Inc.*, 113 N.C. App. 818, 821, 440 S.E.2d 312, 314 (1994). Under the liberal construction accorded FELA, however, if the "railroad's negligence played any part, even the slightest, in causing the employee's injury," the plaintiff should recover. *Id.* Despite this lenient standard, "the usual common law criteria of negligence," including "reasonable foreseeability that the defendant's action or omission might result in injury, must be met." *Id.* As an illustration of how lenient the FELA standard is regarding foreseeability, this Court in *McKeithan* cited a United States Supreme Court case where the verdict for an injured worker was upheld "for injuries sustained as a result of his being bitten by an insect while he was working near a pool of stagnant water" because the railroad "was negligent in allowing a fetid pool to exist." *Id.*

Williams presented testimony regarding 1) the medical literature dating from the 1960s that asbestos caused harm, 2) CSX's membership in the AAR, whose publications and annual meeting minutes acknowledged the danger of asbestos exposure beginning in 1937, and 3) documents from CSX's medical officer dating from the 1970s about the dangers of asbestos. From this evidence, the jury could infer that CSX had knowledge of the harm from asbestos. Defendant does not argue that CSX had no knowledge of the information presented at the AAR meetings. *Cf. Bagley v. CSX Transp., Inc.*, 465

S.E.2d 706, 708 (Ga. Ct. App. 1995) (holding no error in grant of summary judgment where there was "absolutely no evidence of record that CSX had actual or constructive knowledge of the topics discussed at meetings which took place before its formation;" therefore, it was not possible to impute, as a matter of law, this knowledge to CSX). Moreover, there was testimony that even after OSHA regulations required workers be protected from asbestos exposure, plaintiff and his coworkers were not informed about ways to protect themselves. This assignment of error is overruled.

### IV. Jury Instructions

**[4]** CSX contends the trial court erred in failing to instruct the jury on 1) comparative negligence and 2) CSX's specific contentions.

We consider and review jury instructions in their entirety, and under this "standard of review, it is not enough for the appealing party to show that error occurred in the jury instructions; rather, it must be demonstrated that such error was likely, in light of the entire charge, to mislead the jury." *Robinson v. Seaboard System Railroad,* 87 N.C. App. 512, 524, 361 S.E.2d 909, 917 (1987), *disc. review denied* 321 N.C. 474, 364 S.E.2d 924 (1988). FELA established a comparative negligence scheme, so that contributory negligence of an injured worker is not a bar to recovery "but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee." 45 U.S.C. § 53 (2005); *see Conrail v. Gottshall,* 512 U.S. 532, 542, 129 L. Ed. 2d 427, 440 (1994) (noting that "to further FELA's humanitarian purposes, Congress did away with several common-law tort defenses that had effectively barred recovery by injured workers [including rejection of] the doctrine of contributory negligence"). When "determining the sufficiency of the evidence to justify submission of contributory negligence, we consider defendant's evidence" and all reasonable inferences in the light most favorable to the defendant. *Radford v. Norris,* 74 N.C. App. 87, 88, 327 S.E.2d 620, 621, *disc. review denied,* 314 N.C. 117, 332 S.E.2d 483 (1985). An instruction, however, will not be supported by "[e]vidence which merely raises a conjecture as to plaintiff's negligence." *Id.*

We note that the trial court and the parties initially used the term "comparative" when outlining the issues to be discussed at the charge conference, and defendant's brief argues the trial court erred by failing to charge the jury on comparative negligence. The requested instruction contained in the record on appeal and the language used during the charge conference, however, refer to contributory negli-

**WILLIAMS v. CSX TRANSP., INC.**

[176 N.C. App. 330 (2006)]

gence; therefore, we also use that term. First, CSX contends that William's history of smoking was a factor meriting a contributory negligence instruction. Defendant thoroughly cross-examined Williams about his smoking and his related ill health. As defendant's experts testified, it is well established that smoking and mesothelioma are not related. In light of this testimony, we do not believe the trial court erred in failing to give the requested contributory negligence instruction. Defendant has not shown error, in light of the entire charge, that misled the jury. This argument is overruled.

Second, CSX argues the trial court erred in failing to give its requested instructions regarding their contentions. "The trial court is required to give a party's requested instructions when they are correct and supported by the evidence; however, they need not be given exactly as submitted, but must only be given in substance." *Robinson,* 87 N.C. App. at 526, 361 S.E.2d at 918.

Here, prior to the 10 September 2004 recess, the trial court conducted the charge conference, and with the exception of the requested instruction on comparative negligence, the parties agreed to the instructions. Then, just prior to closing arguments, defense counsel requested that the trial court instruct the jury as follows:

Defendant denies each of the plaintiff's allegations in this case and contends that

(1) plaintiff Raymond Williams was not exposed to asbestos dust in any significant or harmful amount,

(2) CSX was not negligent with respect to the safety of the plaintiff's workplace, and

(3) the plaintiff's mesothelioma was not caused by exposure to asbestos.

The trial court declined, instead instructing the jury in pertinent part:

the burden is on plaintiff Raymond Williams to establish, by the greater weight of the evidence, in the case the following facts: First that defendant CSX was negligent in one or more of the particulars alleged, and second, that the defendant CSX's negligence caused or contributed, in whole or in part, to some injury and consequent damage sustained by the plaintiff Raymond Williams.

Plaintiff Raymond Williams alleges that the defendant CSX's conduct . . . was negligent in the following particulars: CSX knew or

should have known that asbestos dust was a hazard to which its employees were exposed. CSX knew or should have known that asbestos dust could cause lung diseases. CSX knew or should have known how to reduce asbestos dust hazards, but did not reduce asbestos dust hazards. CSX should have warned employees that exposure to asbestos dust could cause lung diseases, but CSX did not warn its employees that exposure to asbestos dust could be harmful. The defendant denies each of these allegations.

The trial court reiterated that the burden of proof was on plaintiff in the instructions for each element of negligence, and again when charging on the issue of damages. Defendant's contentions are essentially denials of plaintiff's allegations. Thus, considering the instructions as a whole, defendant's contentions were adequately given to the jury in substance. Accordingly, this assignment of error is overruled.

## V. Post Trial Motions

**[5]** Defendant's remaining arguments relate to the denial of his post-trial motions. CSX maintains that the trial court erred in denying defendant's motions for new trial, directed verdict, and judgment notwithstanding the verdict. In support of these arguments, defendant contends that 1) federal law requires more proof than was proffered in this case, 2) the recess taken to accommodate the trial court's personal plans prevented CSX from receiving a fair trial, and 3) the verdict after a long recess and short deliberations indicates that the jury did not base the verdict on the evidence. We will address each of these contentions in turn.

"A motion for directed verdict pursuant to G.S. § 1A-1, Rule 50(a) tests the sufficiency of the evidence to support a verdict for the nonmoving party, [and a] motion for judgment notwithstanding the verdict pursuant to G.S. § 1A-1, Rule 50(b) is essentially a renewal of an earlier motion for directed verdict." *Whaley v. White Consol. Indus., Inc.*, 144 N.C. App. 88, 92, 548 S.E.2d 177, 180 (citations omitted), *disc. review denied*, 354 N.C. 229, 555 S.E.2d 277 (2001). The trial court applies the same test for each motion, taking the non-movant's evidence as true and considering it "in the light most favorable to him, giving to the non-movant the benefit of every reasonable inference that may legitimately be drawn from the evidence with contradictions, conflicts, and inconsistencies being resolved in the non-movant's favor." *Id.* A motion for directed verdict or judgment notwithstanding the verdict should only be denied where the "evi-

dence is insufficient to justify a verdict for the plaintiff," and "a motion for a new trial pursuant to G.S. § 1A-1, Rule 59 is addressed to the trial court's discretion." *Id.*

Defendant maintains that because federal case law governs FELA actions, this case should never have gone to a jury. To support this contention, CSX analogizes this case to that of *Wills v. Amarada Hess Corp.*, 379 F.3d 32 (2d Cir. 2004), *cert. denied*, —— U.S. ——, 163 L. Ed. 2d 64 (2005). We are not persuaded. In *Wills*, the district court excluded the plaintiff's expert testimony, necessary to show causation, because it was based on a "controversial theory" and on animal tests rather than on scientific studies on human subjects. *Id.* at 38-40. As a result of the plaintiff's failure to meet the burden of proof, defendant-employer was granted summary judgment. *Id.* at 40. Affirming the district court's grant of summary judgment, the Second Circuit recognized the district court's broad discretion governing discovery matters and analyzed the rest of the plaintiff's evidence. *Id.* at 41-42. Plaintiff argued Mr. Wills' squamous cell carcinoma was caused from exposure to toxic fumes on defendant's ships, but there was expert testimony to show squamous cell carcinoma can be caused by smoking, a fact that plaintiff's expert's testimony did not consider. *Id.* at 50. In contrast, the evidence in the case below contained a genuine issue of material fact as to causation due to conflicting expert testimony. The trial court appropriately allowed expert testimony on both sides; accordingly, we defer to the actions of the trial court, as the Second Circuit did in *Wills*.

Regarding CSX's contention that it was deprived of a fair trial because of the recess, we note that the trial court has "large discretionary power as to the conduct of a trial" and "in the absence of controlling statutory provisions or established rules, all matters relating to the orderly conduct of the trial or which involve the proper administration of justice in the court, are within the trial court's discretion and are reviewed only for abuse of that discretion." *State v. Waddell*, 351 N.C. 413, 423, 527 S.E.2d 644, 651 (2000).

Prior to jury selection, the trial judge informed the parties that due to his personal travel plans, if the trial were not completed in two weeks, there would be a two-week recess before the conclusion. Neither party moved to continue based on this information. On 10 September 2004, the evidentiary phase of the trial was concluded. The trial court informed the jurors of the two-week recess, instructing them not to discuss or come to any conclusions regarding the case, and then held the charge conference. The trial court did not

abuse its discretion in calling this recess, since the parties were well informed of and did not object to the trial court's time restraints at either the outset of trial or at the time of the recess.

Finally, when denying the motion for a new trial, the trial court found the amount of damages awarded by the jury was justified by the evidence and that defendant had agreed to the jury charge regarding damages:

22. Plaintiff introduced evidence that as a result of developing mesothelioma, his entire left lung was surgically removed. The evidence showed that Plaintiff suffered significant physical pain and mental anguish as a result of that surgical procedure. Plaintiff had to undergo a second surgery when his stomach migrated into his empty chest cavity, a complication of the lung removal surgery. During the surgery to remove Plaintiff's stomach from his chest cavity, doctor's [sic] discovered that the cancer had spread to his stomach. Plaintiff, by the time of trial, had undergone 3 full rounds of chemotherapy, with multiple treatments. After his lung removal surgery, Plaintiff had to take numerous pain pills and other pills daily. Plaintiff's doctors testified that he did not have long to live; that Plaintiff had months rather than years to live. The evidence established that plaintiff could expect to die a painful death. The life expectancy tables were offered into evidence and Plaintiff's life expectancy, pursuant to statute, was approximately 21 years. The jury awarded damages in part for the loss of twenty years of Plaintiff's life. Plaintiff's evidence was that he had past unreimbursed medical expenses of nearly $80,000 and past and future lost wages from a part-time job of nearly $80,000.

23. Plaintiff, Plaintiff's daughter, and Plaintiff's stepson, in addition to medical witnesses, testified about Plaintiff's physical pain, mental suffering, and how the cancer and medical treatment had affected his life.

24. Contrary to Defendant's implication, Plaintiff's counsel did not argue in closing arguments that the jury should award punitive damages. Regardless, Defense counsel did not request that the closing argument be recorded and did not object to any of Plaintiff's closing with respect to damages. The Court specifically instructed the jury that punitive damages were not recoverable and should not be awarded, and there is nothing to indicate any portion of the verdict was for punitive damages.

"Absent an obvious 'substantial miscarriage of justice,' this Court cannot overturn a trial court's denial of a motion for new trial." *Hawley v. Cash*, 155 N.C. App. 580, 585, 574 S.E.2d 684, 688 (2002). Based on our review of the record, we find no substantial miscarriage of justice that would result from upholding the trial court's ruling denying defendant's motion for a new trial.

No Error.

Judges McGEE and STEELMAN concur.