DEPARTMENT OF TRANSPORTATION, Plaintiff v. DAVID C. BLEVINS, Defendant

No. COA08-266

(Filed 6 January 2009)

## 1. Appeal and Error— preservation of issues—post-judgment interest not ordered—not raised below

The issue of whether there was constitutional error in failing to order DOT to pay post-judgment interest was not preserved for appeal where it was not raised at trial.

## 2. Eminent Domain— road widening—effect of median on remaining property

The trial court did not abuse its discretion in an action arising from a road-widening by admitting evidence of the effect of the new median on the value of the remainder of convenience store property. Although DOT argues that this was an exercise of police power and not a compensable injury, the evidence could have been considered in the context of the purpose and use of the taking as well as generally in determining whether the taking rendered the property less valuable.

## 3. Eminent Domain— road-widening—expert testimony— properly excluded

The trial court did not err by excluding the testimony of an expert witness for DOT in a case involving a road-widening project where the notice of the witness was late and the witness's voir dire testimony revealed that his proffered method of proof was not sufficiently reliable.

## 4. Evidence— study—use in cross-examination of expert

The trial court did not abuse its discretion in an action concerning a road-widening project by allowing a witness to be cross-examined about a damage study prepared for DOT. An expert may be cross-examined about material reviewed but not relied upon.

## 5. Witnesses— expert—voir dire about basis of opinion— between direct and cross-examination

There was no error in an action concerning a road widening project where the trial court denied DOT's request to voir dire a witness until after the witness testified about the value of the

property, and then allowed a voir dire about the facts and data underlying the opinion before cross-examination.

Judge JACKSON concurring in part and dissenting in part.

Appeal by plaintiff from order entered 23 February 2006 by Judge J. Marlene Hyatt in Haywood County Superior Court. Appeal by plaintiff and cross-appeal by defendant from judgment entered 17 September 2007 by Judge J. Marlene Hyatt in Haywood County Superior Court. Heard in the Court of Appeals 10 September 2008.

*Attorney General Roy Cooper, by Assistant Attorney General Martin T. McCracken, for plaintiff-appellant.*

*Van Winkle, Buck, Wall, Starnes and Davis, P.A., by Jones P. Byrd and Matthew W. Kitchens, for defendant-appellee and cross-appellant.*

BRYANT, Judge.

The North Carolina Department of Transportation (DOT) appeals from an order entered 23 February 2006 in Haywood County Superior Court which compelled a revision to the plat depicting the boundaries of the subject property. DOT appeals and Defendant David Blevins cross-appeals from a judgment entered 17 September 2007 in Haywood County Superior Court following a jury award to Blevins in the amount of $74,000.01. For the reasons stated below, in part we affirm the judgment of the trial court and in part dismiss the appeal.

Blevins owned a convenience store bordered on two sides by the intersection of Highway 23 and Howell Mill Road in Haywood County. Both were two lane roads without medians or other obstructions between the lanes. Traffic was controlled by a stop sign halting traffic coming from Howell Mill Road onto Highway 23. Traffic moving along Highway 23 was able to turn into Blevins' convenience store parking lot from either direction along approximately 285 feet of unobstructed frontage. Traffic along Howell Mill Road was also able to turn into Blevins' convenience store from either direction.

On 16 April 2001, DOT filed a complaint, as well as a declaration of taking and notice of deposit, to facilitate the widening of Highway 23 from two lanes to five in front of Blevins' convenience store. DOT's project affecting Blevins' property included the placement of a guardrail along Highway 23, a right turn lane along Highway 23 onto Howell Mill Road, a traffic light at the intersection of Highway 23 and

Howell Mill Road, and a traffic island placed at the top of Howell Mill Road at the intersection of Highway 23. DOT anticipated the taking of a new right of way to comprise 279 square feet and a temporary drainage easement of 1023 square feet. Therefore, DOT estimated $2,375.00 to be just compensation to Blevins and deposited that amount with the Haywood County Superior Court. In answer to DOT's complaint, Blevins denied that the amount deposited represented just compensation.

Pursuant to a request by both parties, the trial court held a hearing on 18 January 2006 to resolve all issues other than damages with regard to the taking. And, on 23 February 2006, the trial court filed an order which increased the area of Blevins' property to be considered subject to the taking to 2,849 square feet and the temporary drainage easement to 1,739 square feet.

On 21 August 2007, a jury trial in Haywood County Superior Court commenced to determine "the amount of just compensation David C. Blevins [was] entitled to recover from [DOT] for the taking of his property[.]" Prior to the presentation of evidence, DOT made an oral motion in limine to prohibit testimony relating to damages premised on the median constructed on Highway 23 as well as the channelization of access to the convenience store. Blevins responded that the jury should be allowed to consider any factors that impact the fair market value of the property which involve the size and shape of the property, the ability to access the convenience store after the taking, and the impediments put upon the property by the roadway project. The trial court stated that it would rule on the evidence as the witnesses testified.

At trial, David Blevins testified over objection to the impact of the project on the accessibility of his convenience store and its fair market value. Blevins testified as follows:

Blevins:    [O]ne of the attributes of a convenient store is that it's easy to get in, easy to get out, easy to park, it's easy to get your stuff and get back in the car and go home.

Attorney:. How has that been changed by the roadway project?

Blevins:    Well, we're not as open. We don't have the open frontage that we once had. We have traffic signals that block traffic. . . . The continuous right turn movement makes it more difficult and not quite as safe for people to get in and out. [Because of the traffic island] [w]e

are being denied the Howell Mill Road traffic coming from Russ Avenue. It's harder to do business.

Blevins also called witnesses Charles Brown, Carroll Mease, and Bobby Joe McClure to testify to the convenience store's change in fair market value due to the DOT project. Brown, Mease, and McClure testified that the fair market value of Blevins' property dropped between $99,705.04 and $88,795.00.

DOT called Gary Faulkner as an expert witness in traffic management, but after a voir dire by Blevins, the trial court denied Faulkner the opportunity to testify. DOT called appraisal witness Marty Reece. During cross-examination, Blevins questioned Reece about a report created for DOT to "analyze[] the effect of modification of access, limited parking and proximity of highways to buildings on the impact of the value of the property." The report was never admitted, and Reece testified that while he was aware of the report he did not use it in analyzing the property.

After the presentation of evidence, the jury awarded Blevins $74,000.01. On 17 September 2007, the trial court entered a judgment consistent with the jury award and stated further that Blevins was "entitled to a judgment against the [DOT] for interest on the sum of seventy one thousand six hundred and twenty five dollars and one cent ($71,625.01) at the rate of eight percent (8%) per annum from August 16, 2001 up to and including the date of this Judgment." DOT appeals from the 17 September 2007 judgment as well as the order entered 23 February 2006. Blevins cross-appeals.

---

On appeal, DOT raises the following four issues: whether the trial court erred (I) in admitting evidence of the effect of the median on the value of the remainder of Blevins' property; (II) in excluding the testimony of Gary Faulkner; (III) in permitting Blevins to cross examine Marty Reece based upon the DOT report; and (IV) in denying the DOT's request to voir dire Blevins' witnesses Charles Brown, Carroll Mease, and Bobby McClure.

---

[1] On cross appeal, Blevins raises the issue of whether the trial court committed reversible constitutional error by failing to order DOT to pay post-judgment interest. Because Blevins raises a constitutional issue for the first time on appeal, we hold this issue is not properly preserved for our review and dismiss Blevins cross-appeal. *See Daniels v. Hetrick*, 164 N.C. App. 197, 200, 595 S.E.2d 700, 702

(2004) (constitutional issues not raised before the trial court are not properly preserved for appeal) (citation omitted).

*I*

[2] DOT asserts that the trial court erred in admitting evidence of the effect of the median on the value of the remainder of Blevins' property. DOT argues that the construction of a median by DOT to separate lanes of traffic is an exercise of the State's police power and is not a compensable injury; therefore, the trial court abused its discretion by not prohibiting Blevins, his witnesses, and his counsel from mentioning the island in testimony or in argument to the jury. We disagree.

"Admission of evidence is addressed to the sound discretion of the trial court and may be disturbed on appeal only where an abuse of such discretion is clearly shown." *Cameron v. Merisel Props., Inc.*, 187 N.C. App. 40, 51, 652 S.E.2d 660, 668 (2007) (citation and quotations omitted). "To demonstrate an abuse of discretion, the appellant must show that the trial court's ruling was manifestly unsupported by reason, or could not be the product of a reasoned decision." *Wachovia Bank, N.A. v. Clean River Corp.*, 178 N.C. App. 528, 531, 631 S.E.2d 879, 882 (2006) (citation and emphasis omitted).

In *Barnes v. North Carolina State Highway Comm'n*, 257 N.C. 507, 126 S.E.2d 732 (1962), our Supreme Court addressed the compensability of a taking by the State Highway Commission to widen a highway and insert a median between the northbound and southbound lanes. *Id.* at 513-14, 126 S.E.2d at 737. At trial, the petitioner, who owned a filling station and bulk oil premises and another business called the Frozen Custard Place, alleged that his property "was *greatly damaged* by the division of the lanes of travel in such a manner that said property [could] only attract and serve potential customers traveling in [one direction] along [the] highway." *Id.* at 514, 126 S.E.2d at 737 (emphasis added). "[The] Petitioner offered evidence, which . . . tended to show that the . . . damage to the remainder of his tract which was not taken consisted *primarily* of diminution in value because of the way in which the highway was constructed, particularly the construction of what has been referred to as a median strip . . . ." *Id.*

Our Supreme Court reasoned that while "[t]he state must compensate for property rights taken by eminent domain[,] damages resulting from the exercise of police power are noncompensable." *Id.*

at 514, 126 S.E.2d at 738 (citations omitted). On these grounds, our Supreme Court awarded the State Highway Commission a new trial. *Id.* at 522, 126 S.E.2d at 743.

Following the reasoning in *Barnes*, this Court in *City of Concord v. Stafford*, 173 N.C. App. 201, 618 S.E.2d 276 (2005), upheld the partial summary judgment of a trial court for the plaintiffs where "[the] Defendants presented an appraisal that showed the reduction in value of their property due to the road widening project to be $103,890. The majority of this amount ($98,665) was attributable to the restriction of access to lanes in only one direction of travel by the median." *Id.* at 203, 618 S.E.2d at 277. In both *Barnes* and *Stafford* the Court denied the award of compensation based on the construction of a median which was the primary cause of diminution of property value. *See Barnes*, 257 N.C. at 518, 126 S.E.2d at 740; *Stafford*, 173 N.C. App. at 205, 618 S.E.2d at 278-79.

Here, the challenged issue is not whether the award was primarily or substantially based on testimony regarding the median. In fact, there was substantial testimony as to the effect the taking of 279 square feet of property and a temporary drainage easement had on the fair market value of the property considering the reduction in access and parking. The challenge is to the exercise of the trial court's discretion.

Evidence of the construction of the traffic median near Blevins' property could have been considered in the context of the purpose and use of the taking as well as generally considered in determining whether the taking rendered Blevins' property less valuable. *E.g., DOT v. M.M. Fowler, Inc.*, 361 N.C. 1, 14, 637 S.E.2d 885, 895 (2006) (a jury may consider the adverse effects of a condemnation on a business, not as a separate item of damage but rather a circumstance tending to show the diminution in the over-all fair market value of the property). Therefore, the trial court's ruling was not manifestly unsupported by reason. Accordingly, this assignment of error is overruled.

*II*

[3] Next, DOT argues that the trial court erred in excluding the testimony of Gary Faulkner as an expert witness. We disagree.

[North Carolina General Statute section] 8C-1, Rule 702(a) permits the admission of expert testimony if it will assist the trier of fact to understand the evidence or to determine a fact in issue.

The determination of the admissibility of expert testimony is within the sound discretion of the trial judge and will not be disturbed on appeal absent abuse of discretion.

*Floyd v. McGill*, 156 N.C. App. 29, 38, 575 S.E.2d 789, 795 (2003) (citation and quotations omitted).

Our Supreme Court has established a three-step inquiry for evaluating the admissibility of expert testimony as follows: "(1) Is the expert's proffered method of proof sufficiently reliable as an area for expert testimony? (2) Is the witness testifying at trial qualified as an expert in that area of testimony? (3) Is the expert's testimony relevant?" *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 458, 597 S.E.2d 674, 686 (2004).

Here, DOT notified Blevins of its intent to call Faulker as an expert witness on the day jury selection began. Blevins objected. The trial court granted Blevins the opportunity to voir dire Faulkner prior to deciding whether the witness should testify. On voir dire, Faulkner testified that he was called by DOT the week before the trial. He was asked to "look at the [property] from a circulation traffic flow perspective and render an opinion if the site had reasonable, suitable internal circulation and access to the adjacent highway system."

However, Faulkner's first visit to Blevins' property was the day before he was called to testify. At that time, he observed the flow of traffic in and around the convenience store for approximately four or five hours. Faulkner did not have available to him the dimensions of Blevins' property prior to the taking. And, Faulkner's diagrams and aerial photo of the site did not reflect modifications made during construction of the site.

After voir dire, the trial court denied Faulkner the opportunity to testify based on the late notice to Blevins about calling Faulkner as a witness as well as the discrepancies between Faulkner's testimony regarding the roadway plans and what was actually constructed. Therefore, because the notice of Faulkner as an expert witness was indeed late and because Faulkner's voir dire testimony revealed that his proffered method of proof was not sufficiently reliable, the trial court did not err in excluding Faulkner's testimony. Accordingly, we overrule this assignment of error.

*III*

[4] Next, DOT argues that the trial court erred in permitting Blevins to cross-examine Marty Reece with the Naeger Report. We disagree.

[T]he trial court controls the nature and scope of the cross-examination in the interest of justice and confines the testimony to competent, relevant and material evidence. Evidence that is not otherwise admissible may be offered to explain or rebut evidence elicited by the defendant, and this evidence is admissible even though such latter evidence would be incompetent or irrelevant had it been offered initially. In determining relevant rebuttal evidence, we grant the trial court great deference, and we do not disturb its rulings absent an abuse of discretion and a showing that the ruling was so arbitrary that it could not have been the result of a reasoned decision.

*Williams v. CSX Transp., Inc.*, 176 N.C. App. 330, 338, 626 S.E.2d 716, 724 (2006) (internal citations and quotations omitted). "Furthermore, an expert may be . . . cross-examined with respect to material reviewed by the expert but upon which the expert does not rely." *Id.* at 336, 626 S.E.2d at 723.

Here, DOT called Marty Reece as an expert witness in appraisals. Reece had been commissioned to perform an appraisal of Blevins' property which he accomplished by "look[ing] for land sales in the area, . . . try[ing] to find as many comparable sales as [he] [could] as similar as possible to the subject property, and then . . . make adjustments for differences in those properties as compared to the subject to determine a land rate, a land value."

On cross-examination, Blevins' counsel presented Reece with a copy of a damage study that Fran Naeger of Asheville, North Carolina prepared for DOT. Reece testified that he was aware of the Naeger report.

Reece:    The purpose of the report in my opinion was to analyze properties to determine whether or not proximity of the highways have a negative effect on the property, and basically what Mr. Naeger did is he went into the market and looked at various properties, compared them, contrasted the differences in the properties and tried to derive damages, and every property is different.

If you will look at the report, the damage percentage [sic] are drastically different, they change depending on the property, the location, the area, a lot of things.

Counsel: So the percentages range from what to what?

. . .

Reece:   That I don't know.

Counsel: Well, would something like 12.3 percent to 43 percent roughly be the range of harm as found in this report?

. . .

Reece:   [Counselor] I don't recall. I will take you word for it, that sounds accurate for these particular properties, but that is for these particular properties.

Counsel: Well, the purpose of the report was to give the appraisal department sort of a rule of thumb to go by for determining not only proximity but restrictive access to buildings that were commercial and industrial properties and also adverse impacts from limited parking; isn't that right?

Reece:   Yes, sir, that's correct.

Counsel: And you didn't use this DOT document?

Reece:   No, sir, I did not, did not feel it was necessary.

As "an expert may be . . . cross-examined with respect to material reviewed by the expert but upon which the expert does not rely[,]" *Id.* at 336, 626 S.E.2d at 723, we hold the trial court's ruling to allow Blevins, over objection, to cross-examine Reece regarding his knowledge of the Naeger report was not an abuse of discretion. Accordingly, this assignment of error is overruled.

*IV*

**[5]** Next, DOT argues that the trial court erred in denying DOT's request to voir dire Blevins' witnesses Charles Brown, Carroll Mease, and Bobby Joe McClure. Specifically, DOT argues that the trial court erred in denying DOT's request to voir dire Charles Brown until after Brown had submitted his testimony on direct. DOT argues this substantially prejudiced DOT by forcing it to either accept the witness's opinion of the fair market value of Blevins' property after the taking or risk waiving appellate review by eliciting this information from the witness. We disagree.

[T]rial courts are afforded wide latitude of discretion when making a determination about the admissibility of expert testi-

mony. Given such latitude, it follows that a trial court's ruling on the qualifications of an expert or the admissibility of an expert's opinion will not be reversed on appeal absent a showing of abuse of discretion.

*Howerton,* 358 N.C. at 458, 597 S.E.2d at 686 (internal citations and quotations omitted).

Under the North Carolina Rules of Evidence, Rule 705,

[t]he expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless an adverse party requests otherwise, in which event the expert will be required to disclose such underlying facts or data on direct examination or voir dire before stating the opinion. The expert may in any event be required to disclose the underlying facts or data on cross-examination.

N.C. R. Evid. 705 (2007). Though Rule 705 provides for an expert's disclosure of the facts or data underlying the expert's opinion, it also permits the trial court to require such disclosure on direct examination or voir dire or on cross-examination. *Id.*

Here, DOT objected and requested permission to voir dire Charles Brown while he was testifying to the fair market value of Blevins' property on the date of the taking. The trial court denied the request. Brown then testified that the fair market value of Blevins' property on the date of the taking was $664,958, and he further testified as to how he arrived at that figure. Thereafter, DOT was permitted an opportunity to voir dire Brown prior to cross-examination of him regarding the underlying facts or data supporting his opinion. Therefore we overrule this assignment of error.

Also, we note that DOT did not request voir dire for Carroll Mease or Bobby Joe McClure. Therefore, the issue of the trial court's denial as to those witnesses is not properly before us, and we dismiss DOT's assignments of error as it applies to a denial of a request to voir dire Mease and McClure.

---

Constitutional issues not raised before the trial court are not properly preserved for appeal. *See Daniels,* 164 N.C. App. at 200, 595 S.E.2d at 702 (citation omitted). Accordingly, we hold this issue is not properly before us and dismiss Blevins' cross-appeal.

Affirmed in part; dismissed in part.

**DEPARTMENT OF TRANSP. v. BLEVINS**

[194 N.C. App. 637 (2009)]

Judge ARROWOOD concurs.

Judge JACKSON concurs in part and dissents in part.

Judge ARROWOOD concurred in this opinion prior to 31 December 2008.

JACKSON, Judge, concurring in part and dissenting in part.

I concur in sections *II*, *III*, and *IV* of the majority's opinion. However, I respectfully dissent from the majority's holding in section *I* because I believe it departs from precedent established by our Supreme Court in *Barnes v. Highway Commission*, 257 N.C. 507, 126 S.E.2d 732 (1962) as well as this Court's precedent in *City of Concord v. Stafford*, 173 N.C. App. 201, 618 S.E.2d 276 (2005). In view of *Barnes* and *Stafford*, I would hold that the trial court abused its discretion by admitting evidence regarding the effect of the median on the diminution in value of Blevins' property.

The facts in the case *sub judice* are substantially similar to the facts presented in both *Barnes* and *Stafford*. In *Barnes* and *Stafford*, as here, (1) a governmental body used its power of eminent domain to take a portion of a property owner's land to widen a public road; (2) the governmental body installed a median as a part of the roadway project to facilitate safe traffic flow pursuant to its police powers; (3) the median limited the accessibility of the property owner's land; and (4) the property owner sought to recover compensation for the property's diminution in value effected as a result of the median's installation in addition to compensation for the taking. *See Barnes*, 257 N.C. 507, 126 S.E.2d 732; *Stafford*, 173 N.C. App. 201, 618 S.E.2d 276. In both *Barnes* and *Stafford*, the property owners' attempts to recover compensation for the diminution in value resulting from the medians' installations were denied because the installations were held to be proper exercises of police power for which no compensation was required. *See Barnes*, 257 N.C. at 518, 126 S.E.2d at 740; *Stafford*, 173 N.C. App. at 204-05, 618 S.E.2d at 278-79.

In *Barnes*, our Supreme Court concluded

that the instruction that injury, if any, caused [by the restricted flow of traffic as a result of the installation of the median] was for consideration by the jury as an element of petitioner's damages, and the admission of evidence as to the injury to the remaining

portion . . . of petitioner's property caused thereby, were erroneous and entitle the Highway Commission to a new trial.

*Barnes*, 257 N.C. at 518, 126 S.E.2d at 740 (original emphasis omitted). In *Stafford*, we held that the trial court properly granted partial summary judgment to the City of Concord on the issue of whether the diminution in value suffered as a result of the installation of a median was a noncompensable action taken pursuant to the exercise of the city's police power. *Stafford*, 173 N.C. App. at 204-05, 618 S.E.2d at 278-79.

In the case *sub judice*, the majority states that the jury could have considered evidence of the median within the context of the purpose of the taking and generally could have considered evidence of the median in determining whether the taking diminished Blevins' property value. I believe this conclusion contradicts the settled law in North Carolina.

Our Supreme Court already has held that consideration of the diminution in value resulting from noncompensable action pursuant to a governmental body's police power may *not* be considered in conjunction with the otherwise compensable diminution in value resulting from eminent domain. *See Barnes*, 257 N.C. at 518, 126 S.E.2d at 740. Furthermore, our affirmation of partial summary judgment in *Stafford* signals that, as a matter of law, the installation of a median is a noncompensable exercise of a governmental body's police power. *See Stafford*, 173 N.C. App. at 205, 618 S.E.2d at 278-79. While a jury may consider the lost business profits resulting from the State's exercise of eminent domain, a jury may not consider the noncompensable effects of the State's proper exercise of its police power. *Compare Department of Transp. v. M.M. Fowler, Inc.*, 361 N.C. 1, 14, 637 S.E.2d 885, 895 (2006), *with Barnes*, 257 N.C. at 518, 126 S.E.2d at 740. Therefore, in light of the settled law of the State, I would hold that the trial court abused its discretion by admitting testimony regarding the diminution in value of the subject property resulting from the installation of the median—a noncompensable, proper exercise of the State's police power. Based upon my holding as to issue *I*, I also would hold that this matter must be remanded for a new trial. *See Barnes*, 257 N.C. at 518, 126 S.E.2d at 740.